UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION #



Plaintiff

RUTH ANTHONY    vs

SCANNED

DATE: 1/17/04

BY: TOM

Defendants

RALPH BUSBY
JOHN BUTLER
MARV TODD
JACQUELINE NEWSTADT
PATTI SKILES
COMPUTER SCIENCES CORPORATION (CSC)

## COMPLAINT

1. Plaintiff Ruth Anthony is a black (African American) female citizen living in Suffolk County, at 60 Edgewood Street, Boston, Commonwealth of Massachusetts. At all times relevant to this action, she was an employee (Senior Member of Technical Staff) of Defendant Computer Sciences Corporation (CSC), doing business in Middlesex County, Cambridge, Massachusetts.

2. Defendant Ralph Busby is a white male citizen of the Commonwealth. At all times relevant to this action he was an employee (Program Director) of CSC, doing business in Cambridge.

3. Defendant John Butler, a white male citizen of the Commonwealth, was an employee (Senior Manager) of CSC, Cambridge.

4. Defendant Marvin Todd, a white male citizen of the Commonwealth, was an employee (Project Manager) of CSC, Cambridge.

5. Defendant Jacqueline Newstadt, a white female citizen of Virginia, was an employee (Human Resources) of CSC, doing business in Laurel, Maryland.

6. Defendant Patti Skiles, a white female citizen of the Commonwealth, was an employee (Human Resources) of CSC, Cambridge.

## JURISDICTION

7. This court has jurisdiction over this matter pursuant to 28 U.S.C. s.1332.

## FACTS

8. Plaintiff first worked as a technical writer for Unisys Corporation from January to October 1997. Her title was Senior Product Information Analyst. She was assigned to work in the Enhanced Traffic Management System (ETMS) Documentation group, supporting the Federal Aviation Administration (FAA) in the Volpe National Transportation Systems Center (Volpe). Plaintiff's office was located with the ETMS team in Volpe, located at 55 Broadway, Cambridge, Massachusetts.

9. Effective November 1, 1997, defendant Computer Sciences Corporation (CSC) became Lead Contractor for the Information Systems Services Project (ISSP), herein referred to as the Technical

Support Services Contract (TSSC). CSC offered plaintiff a lateral position of employment under a contract at will. Plaintiff assumed employment with CSC as a Senior Member of the Technical Staff from November 1997 to February 7, 2002. In five years, plaintiff's annual salary was $42,016 to $51,496.

10. Plaintiff's duties were to develop technical documentation. Said duties included but were not limited to designing, researching, writing, editing, indexing, and distributing reference, training, and system administration manuals, tutorials, online help text, functional and version descriptions, and system design documents. Having worked as a technical writer since 1981, with a 1984 Certificate in Software Technical Writing and a 1975 BA in Journalism from Northeastern University, plaintiff was qualified for her position.

11. Between 1997 and 2000 five technical writers and an editor worked in the ETMS Documentation group. Plaintiff was the only black in the group while all others were white. In 2000, plaintiff was the only full-time technical writer in ETMS. During that time, one other technical writer, Mary Costello, worked part-time in ETMS and was afforded training, project leadership, awards, and promotion in ETMS.

12. As ETMS Documentation supervisor, defendant Marv Todd shared an office with Costello from 1999 to 2002 and at first only communicated with plaintiff about projects through Costello, who was allowed to delegate work to plaintiff. Todd instructed plaintiff to assist Costello in her work. Plaintiff was not given credit for assistance. Little help was given with plaintiff's own work.

13. Between 1999 and 2000, defendants Todd and John Butler permitted Costello to acquire training in Microsoft Word, Visio, and HTML. Plaintiff was not afforded the same training opportunities even though she requested it.

14. In January 2001 plaintiff asked Todd and Butler for a promotion and higher merit increase. Butler told plaintiff that she made enough money and he did not concur with a promotion because plaintiff did not meet the requisites for the next level position of Computer Scientist, although she did meet the job requirements.

15. On April 4, 2001 plaintiff filed a complaint with the Massachusetts Commission Against Discrimination (MCAD) and the Equal Employment Opportunity Commission (EEOC) for CSC's disparate treatment based on plaintiff's race and color.

16. May 14, 2001 plaintiff and defendants Todd, Jacqueline Newstadt, and Patti Skiles attended an MCAD hearing conference wherein the investigator recommended that immediately following the hearing all parties present should meet among themselves in an attempt to come to a resolution.

17. Plaintiff met with Todd, Newstadt, and Skiles in the cafeteria of One Ashburton Place, Boston, Massachusetts. At that meeting Newstadt told plaintiff that she was in the wrong position and would be changed from the technical field to the clerical field before possibly being promoted to Professional Staff Specialist, a position at the time only in Maryland. Newstadt agreed that plaintiff made enough money and told plaintiff to hope to be on the job for 15 years like plaintiff's co-worker Costello.

18. Towards the end of May 2001, Costello complained to Todd about working on a project with plaintiff. Todd reprimanded plaintiff. He made plaintiff solely responsible for writing, editing, formatting, and distributing for review over 2000 pages of "low-priority" documentation within unreasonably short deadlines.

19. Around June 26, 2001 Costello told plaintiff that the ETMS Documentation group was moving out of Volpe to Five Cambridge Center, Cambridge, Massachusetts. Plaintiff asked Todd about the move and he said, "Don't hold your breath." That same day Butler sent an email saying that the move was supposed to be confidential because it was not definite.

20. On October 22, 2001 plaintiff received email regarding office furniture at Five Cambridge Center. When she asked Butler about it, he said the ETMS Documentation group would move if there was a consensus. Plaintiff then told Todd, Butler, Newstadt, and Ralph Busby that she was opposed to the move because the move would prevent her from performing the job efficiently. Plaintiff would be separated from the ETMS project team. She would be the only employee moving. Others were keeping their offices in Volpe in addition to having an office at Five Cambridge Center. Plaintiff's supervisor, Todd, would remain at Volpe only.

21. January 17, 2002, plaintiff asked Butler if there was an alternative to moving. Butler did not answer plaintiff's email message.

22. February 7, 2002 Butler and Skiles informed plaintiff that she was being terminated. Defendants stated that plaintiff abandoned her job and voluntarily resigned.

23. Contested factual issues include the following:
    a. Whether plaintiff's termination was because of her race and color.
    b. Whether the reason offered by the employer was a pretext for discrimination.
    c. Whether CSC was a joint employer of co-worker.
    d. Whether plaintiff was terminated in retaliation for having opposed unlawful employment practices.
    e. Amount of plaintiff's damages.

24. Plaintiff's legal theories include pretext and joint employer theories. Plaintiff sets forth a prima facie case of employment discrimination under Title VII, 42 U.S.C., s.1981 and M.G.L. c.151B, s.4 by showing that she belongs to a protected class. She applied for and was qualified for a job for which the employer was seeking applicants. Despite her qualifications she was rejected. After her rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's similar qualifications. After February 7, 2002, CSC advertised for an ETMS technical writer several times. Plaintiff submitted a resume via the Internet on May 7, 2003.

25. As proof of pretext, plaintiff's termination was in retaliation for opposing discriminatory employment practices regarding promotion, compensation, job assignment, hostile behaviors and attitudes, and termination. M.G.L. c.151B, s.4 makes an unlawful practice for any employer to discharge or otherwise discriminate against a person opposed to any practice forbidden under the chapter or who has filed a complaint.

26. Plaintiff believes that the termination decision was because defendants were annoyed that plaintiff had filed a discrimination complaint. A simple complaint or protest against discrimination provides protection for an employee under opposition to unlawful practices.

27. Aware that plaintiff had complained of discriminatory treatment to MCAD, CSC retaliated in bad faith and maliciously terminated plaintiff's employment. All the defendants instigated, 10 months after plaintiff complained to MCAD, terminated plaintiff's employment with CSC. Plaintiff was terminated

one month after her fifth anniversary working on ETMS. This was two months before plaintiff's next annual performance appraisal and merit increase.

28. Plaintiff believes that CSC used the move as a pretext to discriminate against and subsequently terminate plaintiff's employment. Plaintiff was alleged to have refused to move without just cause. CSC must explain job abandonment and state whether resignation was voluntary or forced. Due process requires that employees have a fair procedural process before they are terminated if the termination is related to a liberty such as right to free speech.

29. As proof of Joint Employer theory, MCAD did not allow discovery to find a valid comparator. Defendants said the co-worker was an employee of Subcontractor Battelle Memorial Institute and CSC had no control over co-worker's rate of pay or job title.

30. CSC has not explained its Lead Contractor/Subcontractor relationship on TSSC. If subcontractors are not compared, similarly-situated work and titles of CSC employees can be compared.

31. Executive Order 1246 prohibits federal contractors and subcontractors from discriminating due to race. Enforced by the Office of Federal Contract Compliance Programs, CSC is required to have an Affirmative Action policy to ensure Equal Employment Opportunity. 42 U.S.C. s. 1981 prohibits race discrimination in all contracts.

## ALLEGATIONS

32. Plaintiff cites the following counts as claims for relief. The defendants wrongfully, maliciously, in bad faith, and because of plaintiff's race and color:
    a. Terminated plaintiff's employment in violation of Massachusetts General Laws, c.151B, s.4, Equal Employment, Title VII of the Civil Rights Act of 1964 and 42 U.S.C.
    b. Defendants violated plaintiff's right to employment free from discrimination and deprived plaintiff of a right to the full and equal benefit and security enjoyed by white citizens.

33. On or before February 7, 2002, defendants conspired and agreed among themselves to deny plaintiff the right to make and enforce her employment with CSC. In furtherance of this conspiracy, defendants:
    a. Gave plaintiff an extraordinarily heavy work load.
    b. Consistently rated performance of plaintiff while not evaluating co-worker's performance of similarly-situated work.
    c. Refused plaintiff the opportunity to pursue training that was offered to a co-worker.
    d. Denied plaintiff the same compensation offered a co-worker for a smaller work load of similar-situated work.
    e. Denied plaintiff a promotion.
    f. Subjected plaintiff to emotional distress.
    g. Procured the termination of plaintiff's employment with CSC.

## DAMAGES

34. Plaintiff timely filed a complaint #01130870 with MCAD and #16CA11320 with EEOC on April 4, 2001. MCAD issued a Notice of Dismissal March 3, 2003. EEOC issued a Dismissal and Notice of Rights September 26, 2003. Plaintiff has exhausted administrative remedies.

35. Since February 7, 2002 plaintiff has remained ready, willing, and able to perform tasks as described for TSSC. The unlawful, illegal, improper and malicious conduct of defendants deprived plaintiff of a means of existence and opportunity to procure work of equal dignity. Plaintiff has been humiliated and caused to suffer great pain in mind and body.

36. As a result of the wrongful acts of defendants, as alleged, plaintiff has suffered actual damages, loss wages, been subjected to humiliation and embarrassment, experienced undue stress, and been damaged and prevented from transacting business.

WHEREFORE, plaintiff requests a letter of recommendation, CSC to offer employees Diversity Training workshops, two years retroactive pay, legal fees, court costs, CSC employee reinstatement, and/or a five-year government contract procurement award to plaintiff. Plaintiff demands judgment against defendants for damages and such other relief as this court deems just.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

*/s/ Ruth Anthony*
Ruth Anthony, Pro Se
60 Edgewood Street, Roxbury, MA 02119
617-445-5889