UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUTH ANTHONY,<br><br>             Plaintiff,<br><br>v.<br><br>RALPH BUSBY, JOHN BUTLER, MARV TODD, JACQUELINE NEWSTADT, PATTI SKILES, and COMPUTER SCIENCES CORPORATION,<br><br>             Defendants. | Civil Action No. 03-cv-12423-RWZ |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO SIGN AUTHORIZATIONS FOR THE RELEASE OF RELEVANT RECORDS AND TO PROVIDE A COMPLETE ANSWER TO AN INTERROGATORY**

Defendant, Computer Sciences Corporation ("CSC"), moved pursuant to Fed. R. Civ. P. 37(a) for an order compelling Plaintiff, Ruth Anthony: (1) to sign an authorization for the release of her federal income tax returns from 2002 to the present; (2) to sign an authorization for the release of her mental health records from 2001 to the present; and (3) to provide an answer to Interrogatory No. 10 regarding Plaintiff's claim of race discrimination against another employer. This memorandum and the Affidavit of Joan Ackerstein are filed herewith in support of that motion.

**Procedural Background**

This action arises out of Plaintiff's employment with Computer Sciences Corporation ("CSC"). Plaintiff worked for CSC from approximately 1997 as a technical writer in the Documentation Group until she refused to relocate to a building several streets away. In her Complaint, Plaintiff is now calling her refusal to relocate a discharge and alleges that it was based upon her race and color, in violation of M.G.L. c. 151B, §4, Title VII of the Civil Rights

Act of 1964, and 42 U.S.C. §1981. Plaintiff also alleges that she was discharged in retaliation for filing a charge with the Massachusetts Commission Against Discrimination. In her Complaint, Plaintiff alleges that Defendants subjected her to emotional distress and that she has been "humiliated and caused to suffer great pain in mind and body." (Complaint, ¶35) She also alleges that Defendants' conduct has deprived her of a "means of existence and opportunity to procure work of equal dignity." (Complaint, ¶35)

### Plaintiff's Responses To Written Discovery Requests

As part of their discovery, on June 21, 2004, Defendants, CSC, Ralph Busby, John Butler, Patricia Skiles, and Marvin Todd ("Defendants"), served their first request for documents and their first set of interrogatories upon Plaintiff. (Ackerstein Aff., Exs. A and B) Plaintiff served upon Defendants her response to interrogatories and a chart of the documents that she was producing in response to Defendants' document requests, along with responsive documents, on July 29, 2004. (Ackerstein Aff., Exs. C and D)

### Request for Tax Returns

In her response to Defendants' first request for documents, Plaintiff failed to produce copies of her federal and state income tax returns for the years 2001 through the present. The request and Plaintiff's response are set forth below:

**REQUEST NO. 19**

Copies of Plaintiff's federal and state income tax returns, W-2 forms, and any other documents reflecting Plaintiff's income for the years 2001 through the present.

In her chart of documents produced, Plaintiff indicated that she was producing W-2 forms in response to Request No. 19. (Ackerstein Aff., Ex. D) Indeed, Plaintiff provided W-2 forms reflecting her income from CSC for the years 2001 and 2002. (Ackerstein Aff., Ex. E) Plaintiff,

2

however, did not provide other W-2 forms or the requested federal or state income tax returns, nor did she respond or object to CSC's request for such documents.

### Request for Medical and Mental Health Records

Plaintiff also failed to produce documents responsive to Defendants' request for records related to services provided by health care providers whom Plaintiff has visited since January 2001. The request for documents and Plaintiff's response are set forth below.

**REQUEST NO. 27**

Any and all records, including but not limited to, medical records, laboratory and test results, consultation notes, and statements of charges for services rendered maintained by any physician, psychiatrist, psychologist, social worker or other healthcare provider whom Plaintiff visited, consulted, or received treatment from relative to any physical or emotional condition Plaintiff alleges she has had since January, 2001, including but not limited to any condition she claims resulted from Defendants' actions.

In her chart of documents produced, Plaintiff indicated that she was not producing any documents in response to Request No. 27. (Ackerstein Aff., Ex. D) However, Plaintiff did not object to the request or provide any reason for not providing such records. In fact, Plaintiff responded to this request only by typing the word "None" in the chart of documents produced. (Ackerstein Aff., Ex. D) This is puzzling given the fact that Plaintiff identified, in response to Interrogatory No. 12, three health care providers, including a clinical therapist and two psychiatrists, whom she has visited at Boston Medical Center's Behavioral Services Center since her separation from CSC. Interrogatory No. 12 and Plaintiff's response to Interrogatory No. 12 are set forth below.

**INTERROGATORY NO. 12**:

Identify each and every physician, psychiatrist, psychologist, social worker or other healthcare provider whom Plaintiff visited, consulted, or received treatment from relative to any physical or emotional condition Plaintiff alleges she has had since January, 2001, including but not limited to any condition she claims resulted

3

from Defendants' actions. For each physician or other healthcare provider identified, state his or her address; any institutions with which he or she is presently associated or affiliated; any institutions with which the person was associated or affiliated while treating Plaintiff; his or her occupation; his or her area of specialization, if any; the date Plaintiff first consulted that person or entity; the condition for which treatment was sought; the diagnosis that was rendered; the nature of the treatment rendered; whether Plaintiff is presently receiving treatment or consultation from such person or entity; and the cost of treatment.

**RESPONSE TO INTERROGATORY NO. 12**

Peggy Dolan, Clinical Therapist, MSW
Boston Medical Center Behavioral Services, Boston
March, May, September, December 2002
Plaintiff received counseling for distraught feelings due to unemployment, worthiness, and financial crisis.

Dr. Ugazara, Psychiatrist, MD, PhD
Boston Medical Center Behavioral Services, Boston
June 2002
Plaintiff complained of emotional distress, was tested and diagnosed with severe depression. Diet, exercise, and medication were recommended.

Dr. Anna Fitzgerald, MD, PhD
Boston Medical Center Behavioral Services, Boston
January, April, June, December 2003, March and July 2004
Having tried diet and exercise, yet still depressed, fearful of being alone, unemployed and looking for work at 50, and in debt, Plaintiff was prescribed and continues to take medication.

Plaintiff applied for and received free medical care at Boston Medical Center.

(Ackerstein Aff., Ex. C) Although it is clear that documents responsive to Request No. 27 exist based upon Plaintiff's response to Interrogatory No. 12, Plaintiff did not provide such documents in response to Request No. 27.

## Interrogatory Relating To Prior Litigation And Claims Against Other Employers

Plaintiff also failed to answer an interrogatory regarding prior litigation or claims which she has brought against other employers. The interrogatory and Plaintiff's response are set forth below.

4

## INTERROGATORY NO. 10:

State whether Plaintiff has previously instituted litigation or administrative charges against any other company or other organization by which she has been employed or applied for employment, or against any other individual supervisor or manager under whom she has worked. If the answer is in the affirmative, state the date each suit or administrative action was commenced; the name and address of the agency or other forum in which it was commenced; the substance of each such complaint; the outcome or present status of each matter; and identify each and every document upon which Plaintiff relied in answering or which in any way pertains to the information requested in this interrogatory.

## RESPONSE TO INTERROGATORY 10:

Plaintiff objects to this line of questioning as it has no bearing on the matter at hand.

### Plaintiff's Deposition Testimony

At her deposition on November 23, 2004, CSC's counsel asked Plaintiff questions about her income since her separation from CSC, her visits with the health care providers she identified in her response to Interrogatory No. 12, and a charge she brought against another employer.

Plaintiff testified at her deposition that she brought a race discrimination claim against another employer, but she refused to identify the employer. (Plaintiff's Deposition Transcript, p. 32)[1] Plaintiff testified as follows:

Q: You brought a claim of race discrimination against one of these employers?

A: Yes.

Q: Were you represented by an attorney?

A: Yes.

Q: You brought the claim at the Massachusetts Commission Against Discrimination?

A: No.

Q: Did you bring it at the Equal Employment Opportunity Commission?

---

[1] Photocopies of relevant excerpts from the deposition of Plaintiff are attached to the Ackerstein Aff. as Exhibit F and are cited herein as "Plaintiff Tr., p. __."

5

    A:    No.

    Q:    Where did you bring it?

    A:    I don't remember.

(Plaintiff Tr., pp. 32-33)

Plaintiff refused to answer the majority of CSC's counsel's questions relating to the prior discrimination claim, stating that she was not able to do so under the terms of the settlement agreement. (Plaintiff Tr., pp. 32-34) CSC posed the following questions relating to Plaintiff's charge against another employer:

    Q:    Which employer did you bring claim against? . . .

    Q:    Where did you bring it? . . .

    Q:    Could you tell us the basis. . . .

    Q:    What year did this occur? . . .

(Plaintiff Tr., pp. 32-33) Because Plaintiff refused to respond to the above questions, CSC's counsel informed Plaintiff that CSC is entitled to such information and that CSC would seek a court order compelling Plaintiff to produce such information. (Plaintiff Tr., pp. 33-34, 37, 164)

Regarding her income, Plaintiff testified that she did not work in 2002 subsequent to her separation from CSC, that she did not work in 2003, and that she worked only some part-time temporary work beginning in June 2004. (Plaintiff Tr., pp. 42-43, 47) Plaintiff further testified that she did not file an income tax return in 2003 because she did not "earn anything." (Plaintiff Tr., pp. 51) Despite her lack of income, according to Plaintiff, she has not missed any mortgage payments on the home that she owns. (Plaintiff Tr., pp. 51) Plaintiff further testified that she wrote a business plan for a technical writer business and started her own business, Tech Writer Services, which she registered as a sole proprietorship under her name. (Plaintiff Tr., pp. 55-56)

Regarding her mental health, Plaintiff testified that she has not advertised her business, by "put[ting] it on the web," that she seems to procrastinate, and that this is why she has been seeing a therapist. (Plaintiff Tr., p. 57) Plaintiff testified that she began counseling six months after her separation from CSC and that she has visited Peggy Dolan, a therapist; Dr. Ugazara, a psychiatrist who allegedly diagnosed Plaintiff with depression; and Anna Fitzgerald, a psychiatrist who Plaintiff currently visits for her depression issues. (Plaintiff Tr., pp. 52-54) Plaintiff also testified that she has spoken to these health care providers about her depression, her financial problems, and about being unemployed. (Plaintiff Tr., pp. 54-55)

Since Plaintiff's document production relating to her income tax returns and her health care records was incomplete, CSC's counsel discussed with Plaintiff production of such records at her deposition. Counsel for CSC asked Plaintiff if she would be willing to sign authorizations which would allow CSC to obtain copies of her income tax returns and her Boston Medical Center records. (Plaintiff Tr., pp. 164-65) Plaintiff stated that she would sign such authorizations as follows:

> Q: . . . You have not given us copies of any tax returns. If I send you an authorization to obtain copies of your tax returns, will you sign that authorization?
>
> A: Yes, I will. I mean, I have nothing to hide. I didn't file them for 2003. I just filed in 2002. I sent you the W-2 Form, though.
>
> . . .
>
> Q: . . . Will you also sign an authorization for us to get your records from Boston Medical Center?
>
> A: Yes.
>
> Q: I will send you that as well.

(Plaintiff Tr., pp. 164-65)

7

**Plaintiff's Refusal To Sign Authorizations For The Release Of Records**

On December 16, 2004, counsel for CSC sent a letter to Plaintiff along with authorizations for the release of her income tax returns, mental health records, and medical records. (Ackerstein Aff., Exs. G, H, I, and J) In response, Plaintiff sent an email to CSC's counsel stating: "I find it in my best interest NOT to disclose my medical, mental health, and tax records at this time." (Ackerstein Aff., Exhibit K) To date, Plaintiff has not provided executed authorizations for the release of her tax returns, mental health records, or medical records, nor has Plaintiff provided such documents to counsel for CSC. (Ackerstein Aff., ¶ 8) Plaintiff also has not, to date, provided any information to CSC's counsel about her charge of discrimination against another employer. (Ackerstein Aff., ¶ 9)

## ARGUMENT

### Specific Discovery Requested

1. **Plaintiff Should Be Compelled To Sign An Authorization Allowing Federal Tax Authorities To Release Plaintiff's Federal Income Tax Returns For The Years 2002 To The Present**

Plaintiff failed to produce income tax returns for the years 2001 to the present as requested in Defendants' first request for documents. At her deposition, Plaintiff stated that she would be willing to sign an authorization allowing for the release of her income tax returns. However, after counsel for CSC sent an authorization to her, Plaintiff indicated that she was unwilling to sign the authorization. Plaintiff should be compelled to sign the authorization because her income tax returns are relevant to her claims that she has been unemployed since her separation from CSC, except for a few periods of temporary employment, and that she has had no income since her separation from CSC, except for income from the temporary employment. CSC requires Plaintiff's income tax returns to verify the truth of Plaintiff's claim that she has had

no employment, other than periods of temporary employment, since her separation from CSC and to verify Plaintiff's claim that she has had no significant income since her separation from CSC.

Pursuant to Fed. R. Civ. P. 26(b), parties may generally obtain discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . ." In explaining this rule, federal courts have held that relevant information includes any matter that is or may become an issue in litigation. See Multi-Core, Inc. v. Southern Water Treatment Co., 139 F.R.D. 262, 264 n.2 (D.Mass. 1991). Under the relevance standard, there is no doubt that CSC is entitled to Plaintiff's income tax returns for the years 2002 to the present.

Federal courts in numerous jurisdictions, including Massachusetts, have held that tax returns are not absolutely privileged from disclosure and are subject to the same test of relevance as other documents requested under the rules of procedure. See Halperin v. Berlandi, 114 F.R.D. 8, 11 (D.Mass. 1986); see also Heathman v. U.S. District Court for the Central Dist. of Cal., 503 F.2d 1032, 1035 (9th Cir. 1974); Shearson Lehman Hutton, Inc. v. Lambros, 135 F.R.D. 195, 198 (M.D. Fla. 1990); Richards v. Stephens, 118 F.R.D. 338, 339 (S.D.N.Y. 1988); Mitsui & Co. v. Puerto Rico Water Resources Auth., 79 F.R.D. 72, 80 (D.P.R. 1978). Federal courts have also established a two-prong test for the discovery of tax returns: (1) the tax returns must be relevant to the action; and (2) the information contained in the returns must not be otherwise obtainable. See Buntzman v. Springfield Redevelopment Authority, et al., 146 F.R.D. 30, 32 (D. Mass. 1993) (citing to United States v. Bonanno Organized Crime Family of La Cosa Nostra, 119 F.R.D. 625 (E.D.N.Y. 1988)). In considering whether to order the production of tax returns,

many courts note that "relevance" under the federal rules has a very broad meaning. See Heathman, 503 F.2d at 1035. Further, when parties place their income at issue, courts have held that parties have provided a basis for production of tax returns. See Mitsui, 79 F.R.D. at 81.

In the instant action, Plaintiff's tax records are relevant for a number of reasons. Plaintiff claims that she did not earn any income subsequent to her separation from CSC in February 2002 until obtaining part-time, temporary work in June 2004. At her deposition, however, Plaintiff testified that she wrote a business plan and began her own technical writer business, Tech Writer Services. Plaintiff further testified at her deposition that she owns a home and has not missed any mortgage payments, despite her unemployment. Documentation from the IRS verifying Plaintiff's earnings and income in 2002 and 2003 is the best evidence of Plaintiff's income and, thus, the truth of Plaintiff's claims regarding her alleged damages and alleged inability to find a job since her separation from CSC. Furthermore, such information would bear directly on the veracity of Plaintiff's deposition testimony about her unemployment and her lack of income in 2003 and goes directly to the issue of Plaintiff's credibility.

Moreover, information regarding Plaintiff's sources of income is not otherwise obtainable. Although information regarding Plaintiff's income is contained in her 2001 and 2002 W-2 forms, these documents alone do not provide information regarding all of Plaintiff's assets and her other sources of income for 2001 or 2002, assuming she produced every W-2 form she was given for 2001 and 2002 income. Full and complete information regarding Plaintiff's income, which is only available in the income tax returns, is necessary here because Plaintiff has put her income at issue by claiming that she has been unable to find a job since her separation from CSC and by seeking from CSC two years of back pay and reinstatement.

CSC has a particular need for the Plaintiff's income tax returns so that it may verify that Plaintiff has had no other employment since leaving CSC, other than part-time, temporary work starting in June 2004. Plaintiff testified that she has her own technical writer business, and CSC cannot verify that Plaintiff has not earned income through her business or through another entity without examining Plaintiff's income tax returns. The income tax returns would also shed light on Plaintiff's ability to go over two years since her separation in February 2002 without any gainful employment, despite her claim of efforts to seek new employment. The Court should order Plaintiff to execute the authorization form, attached as <u>Exhibit A</u>, to allow for the release of her income tax returns for the years 2002 through the present.

2.  **Plaintiff Should Be Compelled To Execute An Authorization For The Release Of Her Mental Health Records For The Years 2001 To The Present**

Plaintiff failed to produce records relating to her visits with a therapist and psychiatrists at Boston Medical Center's Behavioral Services Center subsequent to her separation from CSC, as requested in Defendants' first request for documents. Rather than object to Defendants' request for such records, Plaintiff merely typed "None" on her chart of documents produced, indicating that she was not producing such records. At her deposition, Plaintiff testified as to her visits with the therapist and two psychiatrists. She also told counsel for CSC that she would be willing to sign an authorization allowing for the release of her Boston Medical Center records. After counsel for CSC sent her an authorization for her signature, however, Plaintiff indicated that she was unwilling to sign the authorization. Plaintiff should be compelled to sign the authorization because her mental health records are relevant to her claims that CSC and the other Defendants caused her emotional distress and that she suffers from major depression.

Plaintiff put her mental state at issue in this case, and accordingly, she should be compelled to produce her mental health records. Specifically, in her Complaint, Plaintiff claims

11

Defendants caused her to suffer "great pain in mind and body" and to experience "undue stress." Further, in her response to Interrogatory No. 12, Plaintiff states that after her separation from CSC in February 2002, she "received counseling for distraught feelings" due to her unemployment and her financial crisis and "complained of emotional distress" and was diagnosed with severe depression. She also indicates that she continued to receive mental health care treatment in 2003 and 2004 and that she continues to take medication. Plaintiff's mental condition is relevant as it bears upon Plaintiff's alleged inability to find employment as a technical writer, her claim that Defendants caused her emotional distress, and her claim for damages in which she seeks two years of back pay.

Further, Plaintiff waived any objections she may have had to Request No. 27 when she failed to object in her response to such request. Even if the Court finds that Plaintiff did not waive objections to providing the requested documents, Plaintiff waived the psychotherapist-patient privilege by failing to assert it and by alleging mental damage and impairment of mental health. See McLaughlin v. McDonald's Corp., 203 F.R.D. 45, 48 (D.Mass. 2001) (denied motion to compel disclosure of psychotherapist records because patient asserted the psychotherapist-patient privilege); Sabree v. United Brotherhood of Carpenters and Joiners, 126 F.R.D. 422, 426 (D.Mass. 1989) (denied motion to compel disclosure of psychotherapist records because plaintiff did not allege psychic injury or psychiatric disorder resulting from alleged discrimination).

Because Plaintiff has not objected to producing her mental health records and because the records are relevant to this action, the Court should compel Plaintiff to execute the authorization form, attached as Exhibit B, to allow for the release of her mental health records for the years 2001 through the present.

3. **Plaintiff Should Be Compelled To Provide A Complete Answer To Interrogatory No. 10**

Interrogatory No. 10 sought information related to lawsuits and charges brought by Plaintiff against other employers, including the date the suit or action was commenced, the name and address of the agency or other forum in which it was commenced, the substance of each complaint, the outcome or present status of each matter, and the documents relied upon in answering the interrogatory. Although Plaintiff objected to this interrogatory, Plaintiff testified at her deposition that she brought a claim of race discrimination against a former employer and that she was represented by an attorney in connection with this claim. Plaintiff refused to answer further questions about this claim at her deposition, stating that she is not allowed to discuss it under the terms of the settlement.

Plaintiff's objection to Interrogatory No. 10 based on relevancy is misplaced and the Court should compel her to provide a complete response. The details about Plaintiff's prior race discrimination claim are relevant to her current claim because such information bears upon Plaintiff's overall credibility and character, and the credibility of her allegations against CSC. Moreover, the details of Plaintiff's claim against a former employer will reveal information about Plaintiff's possible motive, pattern, or plan in bringing the current race discrimination suit against CSC. Such information is crucial to CSC's defense of this action and valuation of Plaintiff's claims. Plaintiff should be compelled to provide a complete response to Interrogatory No. 10 in order to allow CSC to more fully assess Plaintiff's credibility, litigiousness, and possible motive in bringing the current action.

**Conclusion**

For all of the foregoing reasons, the Court should enter an order directing Plaintiff (1) to sign an authorization for the release of Plaintiff's federal income tax returns from 2002 to the

present; (2) to sign an authorization so that the health care providers with whom Plaintiff has visited since 2001 can release Plaintiff's mental health records; and (3) to fully and adequately answer Interrogatory No. 10.

Respectfully submitted,

COMPUTER SCIENCES CORPORATION

By its attorneys,

/s/ Joan Ackerstein
Joan Ackerstein, BBO #348220
Heather L. Stepler, BBO #654269
Jackson Lewis LLP
75 Park Plaza
Boston, MA 02116
(617) 367-0025

Dated: January 11, 2005

## CERTIFICATE OF SERVICE

This is to certify that on January 11, 2005, a copy of the foregoing document was served upon Plaintiff, Ruth Anthony, 60 Edgewood Street, Roxbury, MA, 02119 by first class mail, postage prepaid.

/s/ Heather L. Stepler
Jackson Lewis LLP

# **EXHIBIT A**

| Form **4506** (Rev. January 2004) Department of the Treasury Internal Revenue Service | **Request for Copy of Tax Return** ▶ Do not sign this form unless all applicable parts have been completed. Read the instructions on page 2. ▶ Request may be rejected if the form is incomplete, illegible, or any required part was blank at the time of signature. | OMB No. 1545-0429 |
|---|---|---|

**TIP:** You may be able to get your tax return or return information from other sources. If you had your tax return completed by a paid preparer, they should be able to provide you a copy of the return. The IRS can provide a **Tax Return Transcript** for many returns free of charge. The transcript provides most of the line entries from the tax return and usually contains the information that a third party (such as a mortgage company) requires. See new **Form 4506-T,** Request for Transcript of Tax Return, to order a transcript or you can call 1-800-829-1040 to order a transcript.

**1a** Name shown on tax return. If a joint return, enter the name shown first.
RUTH ANTHONY

**1b** First social security number on tax return or employer identification number (see instructions)
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

**2a** If a joint return, enter spouse's name shown on tax return

**2b** Second social security number if joint tax return

**3** Current name, address (including apt., room, or suite no.), city, state, and ZIP code
Ruth Anthony, 60 Edgewood Street, Roxbury, MA 02119

**4** Address, (including apt., room, or suite no.), city, state, and ZIP code shown on the last return filed if different from line 3

**5** If the tax return is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number. The IRS has no control over what the third party does with the tax return.
Joan Ackerstein
Jackson Lewis, LLP
75 Park Plaza, Boston, MA  02116   (617) 367-0025

**CAUTION:** Lines 6 and 7 must be completed if the third party requires you to complete Form 4506. **Do not** sign Form 4506 if the third party requests that you sign Form 4506 and lines 6 and 7 are blank.

**6** **Tax return requested** (Form 1040, 1120, 941, etc.) and all attachments as originally submitted to the IRS, including Form(s) W-2, schedules, or amended returns. Copies of Forms 1040, 1040A, and 1040EZ are generally available for 7 years from filing before they are destroyed by law. Other returns may be available for a longer period of time. Enter only one return number. If you need more than one type of return, you must complete another Form 4506. ▶ _1040_

Note: If the copies must be certified for court or administrative proceedings, check here . . . . . . . . . . . . . ☒

**7** Year or period requested. Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than four years or periods, you must attach another Form 4506.

12 / 31 / 2002      12 / 31 / 2003      __ / __ / ____      __ / __ / ____

**8** Fee. There is a $39 fee for each return requested. **Full payment must be included with your request or it will be rejected. Make your check or money order payable to "United States Treasury." Enter your SSN or EIN and "Form 4506 request" on your check or money order.**

| a | Cost for each return | $ 39.00 |
|---|---|---|
| b | Number of returns requested on line 7 | 2 |
| c | Total cost. Multiply line 8a by line 8b | $ 78.00 |

**9** If we cannot find the tax return, we will refund the fee. If the refund should go to the third party listed on line 5, check here . . ☒

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax return requested. If the request applies to a joint return, **either** husband or wife must sign. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506 on behalf of the taxpayer.

**Sign Here**
▶ Signature (see instructions)       Date
Telephone number of taxpayer on line 1a or 2a
( )
▶ Title (if line 1a above is a corporation, partnership, estate, or trust)
▶ Spouse's signature       Date

For Privacy Act and Paperwork Reduction Act Notice, see page 2.     Cat. No. 41721E     Form **4506** (Rev. 1-2004)

Form 4506 (Rev. 1-2004) Page **2**

## Changes To Note

*Section references are to the Internal Revenue Code.*

- **Form 4506,** Request for Copy of Tax Return, is now used to request copies of tax returns. Use **new Form 4506-T,** Request for Transcript of Tax Return, to request tax return transcripts, tax account information, W-2 information, 1099 information, verification of non-filing, and record of account.
- The fee for a photocopy of a tax return has increased to $39.

## Instructions

**Purpose of form.** Use Form 4506 to request a copy of your tax return. You can also designate a third party to receive the tax return. See line 5.

**How long will it take?** It may take up to 60 calendar days for us to process your request.

**Where to file.** Attach payment and mail Form 4506 to the address below for the state you lived in when that return was filed. There are two address charts: one for individual returns (Form 1040 series) and one for all other returns.

**Note:** *If you are requesting more than one return and the chart below shows two different service centers, mail your request to the service center based on the address of your most recent return.*

## Chart for individual returns (Form 1040 series)

| If you lived in and filed an individual return: | Mail to the Internal Revenue Service at: |
|---|---|
| Maine, Massachusetts, New Hampshire, New York, Vermont | RAIVS Team 310 Lowell St. Stop 679 Andover, MA 01810 |
| Alabama, Florida, Georgia, Mississippi, North Carolina, South Carolina, West Virginia, Rhode Island | RAIVS Team 4800 Buford Hwy. Stop 91 Chamblee, GA 30341 |
| Arkansas, Colorado, Kentucky, Louisiana, New Mexico, Oklahoma, Tennessee, Texas | RAIVS Team 3651 South Interregional Hwy. Stop 6716 Austin, TX 78741 |
| Alaska, Arizona, California, Hawaii, Idaho, Montana, Nevada, Oregon, Utah, Washington, Wyoming | RAIVS Team Stop 38101 Fresno, CA 93888 |
| Delaware, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, North Dakota, South Dakota, Wisconsin | RAIVS Team Stop B41-6700 Kansas City, MO 64999 |
| Ohio, Virginia | RAIVS Team 5333 Getwell Rd. Stop 2826 Memphis, TN 38118 |
| Connecticut, District of Columbia, Maryland, New Jersey, Pennsylvania, a foreign country, or A.P.O. or F.P.O. address | RAIVS Team DP SE 135 Philadelphia, PA 19255-0695 |

## Chart for all other returns

| If you lived in: | Mail to the Internal Revenue Service at: |
|---|---|
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Georgia, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Tennessee, Texas, Utah, Washington, Wyoming | RAIVS Team Mail Stop 6734 Ogden, UT 84201 |
| Connecticut, Delaware, District of Columbia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia, Wisconsin | RAIVS Team P.O. Box 145500 Stop 2800F Cincinnati, OH 45250 |

**Line 1b.** Enter your employer identification number if you are requesting a copy of a business return. Otherwise, enter the first social security number (SSN) shown on the return. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Signature and date.** Form 4506 must be signed and dated by the taxpayer listed on line 1a or 2a. If you completed line 5 requesting the return be sent to a third party, the IRS must receive Form 4506 within 60 days of the date signed by the taxpayer or it will be rejected.

*Individuals.* Copies of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506 exactly as your name appeared on the original return. If you changed your name, also sign your current name.

*Corporations.* Generally, Form 4506 can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer.

*Partnerships.* Generally, Form 4506 can be signed by any person who was a member of the partnership during any part of the tax period requested on line 7.

*All others.* See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the Letters Testamentary authorizing an individual to act for an estate.

**Signature by a representative.** A representative can sign Form 4506 for a taxpayer only if this authority has been specifically delegated to the representative on Form 2848, line 5. Form 2848 showing the delegation must be attached to Form 4506.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested return(s) under the Internal Revenue Code. We need this information to properly identify the return(s) and respond to your request. Sections 6103 and 6109 require you to provide this information, including your SSN or EIN, to process your request. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, and the District of Columbia for use in administering their tax laws. We may also disclose this information to Federal and state agencies to enforce Federal nontax criminal laws and to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506 will vary depending on individual circumstances. The estimated average time is: **Learning about the law or the form,** 10 min.; **Preparing the form,** 16 min.; and **Copying, assembling, and sending the form to the IRS,** 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506 simpler, we would be happy to hear from you. You can write to the Tax Products Coordinating Committee, Western Area Distribution Center, Rancho Cordova, CA 95743-0001. **Do not send the form to this address. Instead, see Where to file** on this page.

# **EXHIBIT B**

# MENTAL HEALTH RECORDS AUTHORIZATION

I, <u>RUTH ANTHONY</u>, hereby authorize the use or disclosure of my mental health information as described in this authorization.

**ANY INFORMATION NOT PROVIDED SHALL BE COMPLETED BY THE UNDERSIGNED.**

1. Name person/organization (or class of persons) authorized to provide the health information:

   **Any and all mental health care providers (including but not limited to psychologists, psychotherapists, social workers, clergy, marriage counselors, sexual assault counselors, drug counselors and HIV/AIDS counselors) who have provided counseling, treatment or healthcare to Ruth Anthony beginning January 2001 through the present.**

2. Name person(s)/organization(s) (or class of person) authorized to receive and use the information:

   **Please deliver the mental health records to:**
   **Joan Ackerstein**
   **Jackson Lewis LLP**
   **75 Park Plaza**
   **Boston, MA 02116**

3. Provide a specific and meaningful description of the information you authorize to be disclosed (*Example:* "medical examination report and conclusions related to a fitness-for-work exam" or "results of drug testing for employment"):

   *Any and all records relating to mental health treatment provided to me from **January 2001** through the present. These records include, but are not limited to:*

   - Entire patient medical record
   - Operative Reports
   - Laboratory Reports
   - Consults Reports
   - Visit notes
   - Discharge Summary
   - History and Physical Report
   - Test Reports
   - Photographs/Videos/Text
   - Medical Record Abstract

   **NOTE: If this authorization relates to a use or disclosure of psychotherapy notes, it may not be combined with an authorization to disclose any other health information.**

4. State the purpose of the request (If you do not wish to state a purpose, please state, "at the request of the individual."):

   *I am currently involved in litigation. These mental health records are to be used by Jackson Lewis LLP in connection with this litigation.*

   **The following paragraphs describe your rights with respect to this Authorization:**

1. I understand that I have the right to revoke this authorization at any time by notifying in writing the person/organization authorized herein at Jackson Lewis LLP, 75 Park Plaza, Boston, MA 02116.

2. I understand that the revocation is only effective after it is received and logged by such person/organization. I understand that any use or disclosure made prior to the revocation of the authorization will not be affected by the revocation nor will the revocation apply to disclosures made in reliance on this authorization.

3.  I understand that after this information if disclosed, federal law might not protect it and the recipient might redisclose it.

    I understand that I may refuse to sign this authorization and that my refusal to sign will not affect my ability to obtain treatment or payment or my eligibility for benefits.

4.  I understand that I am entitled to receive a copy of this authorization.

5.  I understand: (*Please check one*)

        X    this authorization will terminate once the purpose for the authorization has been accomplished.
        ☐    this authorization will terminate on _____(*insert date*) or sooner in the event I revoke the authorization in writing as provided above.

6.  I understand that this authorization is voluntary.

    Signature of Patient    _____

    Date    _____

    *Personal Representative's Section:*

    I, _____, hereby certify that I am the personal representative of _____ and warrant that I have the authority to sign this form on the basis of:
    _____
    _____