UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUTH ANTHONY,<br><br>　　　　Plaintiff,<br><br>v.<br><br>RALPH BUSBY, JOHN BUTLER, MARV TODD, JACQUELINE NEWSTADT, PATTI SKILES, and COMPUTER SCIENCES CORPORATION,<br><br>　　　　Defendants. | Civil Action No. 03-cv-12423-RWZ |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, Computer Sciences Corporation ("CSC"), Ralph Busby, John Butler, Marvin Todd and Patricia Skiles move for summary judgment on the Complaint in its entirety pursuant to Fed. R. Civ. P. 56 on the ground that there are no material facts in dispute and they are entitled to judgment as a matter of law. Plaintiff's Complaint charges race discrimination and retaliation in connection with her separation from employment from CSC after she refused to relocate her office two blocks away with the other technical writers. In support of their motion, Defendants submit their Rule 56.1 Statement of Material Facts Not In Dispute, Declarations of Patricia L. Skiles and Joan Ackerstein and their supporting memorandum.

### Rule 56.1 Statement of Material Facts Not In Dispute

#### Parties

1.　　Defendant Computer Sciences Corporation ("CSC") is a corporation which is a major provider of information technology to commercial and government markets. CSC has employees in Cambridge, Massachusetts who perform services pursuant to a contract with the United States Department of Transportation. (Skiles Dec. ¶1)

2. Plaintiff Ruth Anthony was employed by CSC as a technical writer in Cambridge from November 1, 1997 through February 7, 2002. (Skiles Dec., ¶3) Plaintiff received positive performance reviews and salary increases throughout her employment. (Skiles Dec., ¶3)

3. Defendant Marvin Todd is employed by CSC as a Senior Project Lead and supervises the Documentation Group in Cambridge. Plaintiff reported to Mr. Todd. (Skiles Dec., ¶4)

4. Defendant John Butler was employed by CSC as a Senior Manager in Cambridge. Mr. Todd reported to Mr. Butler. (Skiles Dec., ¶4)

5. Defendant Ralph Busby is employed by CSC as a Program Director. Mr. Busby is responsible for the administration of the CSC contract with the United States Department of Transportation with which Plaintiff was involved. Mr. Butler reported to Mr. Busby. (Skiles Dec., ¶4)

6. Defendant Patricia Skiles is a Senior Human Resources Recruiter for CSC in Cambridge. (Skiles Dec., ¶1)

### The Volpe Contract

7. The Federal Sector of CSC is a software developer and systems integrator for the civil and defense agencies of the U.S. Government. During the time Plaintiff was employed by CSC, the Federal Sector included two operating groups: Defense and Civil. (Skiles Dec., ¶5)

8. The Civil Group, which has its headquarters in Falls Church, Virginia, is comprised of various business areas. The Transportation Systems business area is responsible for the Volpe National Transportation Systems Center contract to which Plaintiff was assigned. (Skiles Dec., ¶5)

9. In 1997, CSC, with other companies, assumed the Volpe Contract. Under this contract, CSC performs various services for its client, the United States Department of

Transportation. The other companies who assumed the Volpe contract with CSC included Battelle, EG&G, Raytheon (replaced by Crown Consulting), PRC Litton (now PRC NG) and System Technology Associates, Inc. (now Systems Instruments). (Skiles Dec., ¶6)

### Plaintiff's Hiring By CSC

10.  From January 1997 to October 1997, Plaintiff worked as a technical writer for Unisys Corporation, a predecessor to CSC on the Volpe contract. In that capacity, she was assigned to work in the Enhanced Traffic Management System ("ETMS") Documentation Group. That group supported the Federal Aviation Administration in the Volpe National Transportation Systems Center located at 55 Broadway in Cambridge Massachusetts ("55 Broadway"). (Complaint, ¶8)

11.  Effective November 1, 1997, CSC became Lead Contractor for the Information Systems Services Project, known as the Technical Support Services Contract, at Volpe. (Complaint, ¶9)

12.  Prior to that transition of the Lead Contractor role from Unisys to CSC, Plaintiff was interviewed for a position by CSC. (Pl. Tr. 59-63) After being interviewed, CSC made Plaintiff a job offer, setting out the offer in a letter of October 17, 1997. Pursuant to that letter, Plaintiff was offered a position as Member of the Technical Staff with a starting salary of $42,016.00. (Pl. Tr. 60; Ackerstein Dec., Exhibit B)

### The Documentation Group

13.  As a technical writer, Plaintiff was part of the Documentation Group. She reported to Supervisor Marvin Todd and Manager John Butler. (Skiles Dec., ¶7) As a technical writer in the Documentation Group, Plaintiff worked with writers who were employed by other employers working on the Volpe Contract. (Pl. Tr. 66)

14. CSC has the ability to set the terms and conditions of employment only for its own employees. As to its own employees, CSC provides periodic written performance evaluations and salary increases and makes decisions on training to be provided, transfers to other roles and promotions. (Skiles Dec., ¶8)

15. CSC did not set salaries of employees of other contractors working on the Volpe contract. CSC did not provide salary increases to employees of other contractors or performance reviews for those employees. Nor did it decide the training to be provided to those employees or the promotions they would receive. (Skiles Dec., ¶8)

16. Plaintiff received favorable reviews and salary increases throughout her employment with CSC. Her first review was completed by her then-supervisor, Michael Potash, on March 26, 1998, who wrote of her, "Ruth handles all her assignments professionally and efficiently. She takes full responsibility for her tasks + does whatever it takes (from the tedious to the innovative) to get it done well + on time." (Pl. Tr. 140; Ackerstein Dec., Exhibit C)

17. Plaintiff received a second annual review on April 22, 1999, this done by her then-supervisor Marvin Todd. Ruth was credited for her accomplishments and given an overall rating of "Good - Performance consistently meets expectations and job requirements." (Pl. Tr. 140-41; Ackerstein Dec., Exhibit D)

18. Plaintiff's third annual review was completed in May, 2000. Plaintiff once again received credit for her accomplishments and another overall rating of "Good – Performance consistently meets expectations and job requirements." (Pl. Tr. 141-42; Ackerstein Dec., Exhibit E)

19.     Plaintiff's review in 2001 was completed on May 11, 2001. This time Plaintiff received a higher overall rating, "Very Good – Performance consistently exceeds expectations and job requirements." (Pl. Tr. 142; Ackerstein Dec., Exhibit F)

20.     Plaintiff's salary while she was employed by CSC rose from $42,016.00 when she started to $51,496 at the time her employment ended. (Complaint, ¶ 9)  Plaintiff received salary increases of 1.1% in December 1997 (a month after being hired) and of 4.7% in May 1998; 4.5% in May 1999; 4.3% in May 2000; and 6.2% in May 2001. (Skiles Dec., ¶9)

## The Relocation to 5 Cambridge Center

21.     In 2001, CSC was looking at moving the technical writers in the Documentation Group from offices at 55 Broadway in Cambridge to 5 Cambridge Center in Cambridge.  The two buildings are approximately two blocks apart and CSC had employees in both buildings. (Skiles Dec., ¶10)

22.     The reason for the move was that CSC was running out of space at 55 Broadway, where the principal computer was located.  In order to accommodate additional programmers at that location, who needed direct access to the computer, CSC considered moving the technical writers in the Documentation Group to the other location. (Skiles Dec., ¶10)

23.     On June 26, 2001, John Butler sent an e-mail to Plaintiff and other technical writers advising that they could be moving to 5 Cambridge Center.  Plaintiff received that e-mail. (Pl. Tr. 87-89; Ackerstein Dec., Exhibit G)

24.     On October 22, 2001, John Butler sent an additional e-mail to Plaintiff and others. In that e-mail, Mr. Butler advised that there was space at 5 Cambridge Center for the Documentation Group and he suggested that they look at the space.  Plaintiff received that e-mail. (Pl. Tr. 90-91; Ackerstein Dec., Exhibit H)

25.     By e-mail dated January 9, 2002, Plaintiff was advised that her office at 5 Cambridge Center was available for her. That e-mail read, "Hi Ruth. Your office and phone over here are ready for you. The phone number is 374-2737 and your Audix password if 56473. A new computer has been set up for you with Office 2000 installed." Plaintiff received that e-mail. (Pl. Tr. 96; Ackerstein Dec., Exhibit I)

26.     At some point after June 2001, Plaintiff visited 5 Cambridge Center and saw the office that was designated as her future office. Plaintiff believed that her new office was nice, had a nice view, and was larger than her office at 55 Broadway. (Pl. Tr. 96)

27.     Plaintiff did not want to make the move to 5 Cambridge Center. By e-mail dated January 17, 2002, Plaintiff advised John Butler and Marvin Todd that she was opposed to making the move. She stated that as a technical writer, she always had been within the organization for which she wrote. (Pl. Tr. 99; Ackerstein Dec., Exhibit J)

28.     On January 29, 2002, Plaintiff had a telephone conversation with Jacqueline Newstadt, CSC's Employee Relations Manager, located in Falls Church, Virginia. In that call, Plaintiff again complained about the move to 5 Cambridge Center. She said that she believed she would be unable to perform her job from that location. Plaintiff acknowledged that Ms. Newstadt told her CSC would consider it job abandonment if Plaintiff did not relocate to 5 Cambridge Center (Pl. Tr. 105-112)

29.     Subsequent to the telephone conversation, Plaintiff sent Ms. Newstadt an e-mail reiterating the conversation. Plaintiff repeated in the e-mail that she did not want to move because she felt she would not be able to do her job from a new location and that she knew CSC would consider it job abandonment is she did not move. (Pl. Tr. 108-112; Ackerstein Dec., Exhibit K)

30. On February 7, 2002, Patricia Skiles and John Butler met with Plaintiff to discuss the relocation. In their conversation with Plaintiff, Ms. Skiles and Mr. Butler reiterated to Plaintiff that she would be able to perform her job from 5 Cambridge Center. Plaintiff was unwilling to relocate. CSC considered Plaintiff to have resigned and her employment ended. Mr. Butler gave Plaintiff a letter outlining the history of their discussions regarding the relocation. (Pl. Tr. 112-114; Ackerstein Dec., Exhibit L)

31. On February 7, 2002, Plaintiff signed the TSS Contract Exit Clearance Form, indicating her separation from employment as a resignation. (Pl. Tr. 117; Ackerstein Dec., ¶ M)

32. The other two technical writers working on the Volpe Contract in February, 2002, relocated their offices from 55 Broadway to 5 Cambridge Center. These writers included Mary Costello, who was employed by Battelle, and Arthur Rubin, who was employed by EG&G. Both of these employees are white and neither has filed a claim against CSC. Ms. Costello did not retain an office at 55 Broadway. A desk was set aside at 55 Broadway for Documentation Group members to use when they went to 55 Broadway to download information from the computers located there. (Skiles Dec., ¶12)

33. Additionally, Rosanna Masciarelli, employed by STA, began supporting the ETMS Documentation Group exclusively in an administrative capacity in August, 2001. Ms. Masciarelli always worked at 5 Cambridge Center and continued to work there after February 7, 2002. (Skiles Dec., ¶12)

<u>Plaintiff's Posting Of A Resume in 2003</u>

34. Plaintiff contends that she put her resume on an internet site on May 7, 2003 and that the failure to offer her a position was retaliatory. (Complaint, ¶24)

35. When resumes are posted in response to CSC job postings, they are posted to CSC's CareerSource website. The resumes posted to CareerSource in 2003 in response to a

7

technical writer job opening were supposed to be forwarded to Ms. Skiles. Ms. Skiles, CSC's recruiter in Cambridge, never received Plaintiff's resume from CareerSource. (Skiles Dec., ¶13)

36. Nor did Plaintiff advise anyone at CSC in Cambridge in 2003 that she was interested in a position. She did not telephone Ms. Skiles, Mr. Todd, Mr. Butler, or Mr. Busby. Nor did she contact Ms. Newstadt in Falls Church, Virginia. (Pl. Tr. 161-163; Skiles Dec., ¶13)

37. CSC hired only one technical writer in 2003 or thereafter and that individual was hired in June 2003. While Ms. Skiles did not know Plaintiff was interested in returning to work, the fact is that the person hired had greater education and computer skills than did Plaintiff. The individual hired worked at 5 Cambridge Center during his employment with CSC. (Skiles Dec., ¶13)

<u>Plaintiff's Charge of Discrimination</u>

38. On or about April 4, 2001, Plaintiff filed a charge of discrimination with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission. In that charge, Plaintiff claimed that she was discriminated against on the basis of her race because she had been "overlooked for promotions, career advancements and training." (Pl. Tr. 71-72, 78-79; Ackerstein Dec., Exhibit N) Plaintiff named as a respondent in the charge only CSC. Plaintiff did not name as respondents any of the individuals who are defendants in this action. Nor did she mention any of the individuals by name in the body of the charge. (Id.)

39. CSC filed a position statement on May 17, 2001, denying the allegations of discrimination. (Skiles Dec., ¶14) Ms. Skiles, Ms. Newstadt and Mr. Todd attended an investigative conference of the matter on May 14, 2001. That was the last action CSC took to defend the charge of discrimination. On March 4, 2003, the MCAD issued a dismissal of the action. (Skiles Dec., ¶14)

40.     In April 2001, when Plaintiff filed her charge of race discrimination, Plaintiff was the only technical writer employed by CSC. (Skiles Dec., ¶14)

<u>Plaintiff's Prior Complaint</u>

41.     In 1984, Plaintiff, then represented by counsel, filed a complaint of race discrimination against a prior employer, Chas. T. Main. The Complaint was filed in Superior Court, Suffolk County, and made allegations of discriminatory treatment virtually identical to those alleged here. In particular, Plaintiff alleged that a female co-worker received more favorable treatment than she did. (Ackerstein Dec., Exhibit S)

42.     Plaintiff settled the action against Chas. T. Main. Despite an interrogatory asking the manner in which the case was resolved and this Court's Order of February 16, 2005 directing that she respond, Plaintiff failed to provide that information. Rather, she supplemented answers to interrogatories to state only that the matter was resolved but she did not receive any settlement. (Ackerstein Dec., Exhibits O, P, Q, and R)

## **LOCAL RULE 7.1(A)(2) CERTIFICATION**

Counsel for Defendants hereby certify that they left a voice mail message for Plaintiff on March 30, 2005 regarding conferring about the filing of this motion. Plaintiff did not return Defendants' counsel's call. Accordingly, the issues raised in this motion have not been narrowed.

Respectfully submitted,

COMPUTER SCIENCES CORPORATION,
RALPH BUSBY, JOHN BUTLER, MARVIN
TODD, and PATRICIA SKILES
By their attorneys,


/s/ Joan Ackerstein
Joan Ackerstein, BBO #348220
Heather L. Stepler, BBO #654269
Jackson Lewis LLP
75 Park Plaza
Boston, MA 02116
Dated: March 30, 2005            (617) 367-0025

## CERTIFICATE OF SERVICE

    This is to certify that on March 30, 2005, a copy of the foregoing document was served upon Plaintiff, Ruth Anthony, 60 Edgewood Street, Roxbury, MA, 02119 by first class mail, postage prepaid.

/s/ Heather L. Stepler
Jackson Lewis LLP