UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUTH ANTHONY,<br><br>Plaintiff,<br><br>v.<br><br>RALPH BUSBY, JOHN BUTLER, MARV TODD, JACQUELINE NEWSTADT, PATTI SKILES, and COMPUTER SCIENCES CORPORATION,<br><br>Defendants. | Civil Action No. 03-CV-12423-RWZ |

## DECLARATION OF PATRICIA L. SKILES

I, Patricia L. Skiles, on oath, depose and state as follows:

1. I am a Senior Human Resources Recruiter, Federal Sector Staffing and Recruitment, for Computer Sciences Corporation ("CSC"), a corporation which is a major provider of information technology to commercial and government markets. I have held this position since June, 2001. My office is located at 5 Cambridge Center, Cambridge, Massachusetts, 02142, where CSC has employees who perform services pursuant to a contract with the United States Department of Transportation. Between March 1998 and June 2001, I worked as a Senior Human Resources Specialist at CSC's Cambridge, Massachusetts office. Between 1992 and March 1998, I worked in CSC's office located in Falls Church, Virginia, working first as a Training Coordinator and then as a Member of Professional Staff, Human Resources Specialist.

2. In my role as Senior Human Resources Recruiter, I report to Bonita Moore, CSC's Senior Human Resources Manager, who works in Lanham, Maryland. I am the only Human Resources employee at CSC's Cambridge office. Accordingly, in my role as Senior Human Resources Recruiter at CSC's Cambridge office, my duties include employee relations

support, recruiting applicants, interviewing applicants, sourcing resumes, counseling employees, conducting benefits briefings, assisting with layoffs, facilitating recruiting and benefits transitions, and assisting with various special projects.

### Plaintiff's Employment With CSC

3. Through my position as Senior Human Resources Recruiter, I became familiar with Plaintiff, Ruth Anthony, during her employment with CSC in Cambridge. Plaintiff was employed by CSC as a technical writer from November 1, 1997 through February 7, 2002. During Plaintiff's employment, Plaintiff received positive performance reviews from her supervisors and salary increases.

4. During the final few years of her employment with CSC, Plaintiff reported to Marvin Todd, a CSC employee, who is a Senior Project Lead and is responsible for supervising the Documentation Group. Mr. Todd reported to John Butler, a former CSC employee who was employed as a Senior Manager. Mr. Butler reported to Ralph Busby, a CSC employee, who is a Program Director and who is responsible for the administration of CSC's contract with the United States Department of Transportation.

### CSC Wins the Volpe Contract

5. CSC provides software development and systems integration services for several industries, including the United States Government. Through CSC's Federal Sector, CSC provides services to several defense and civil agencies and departments of the United States Government. During Plaintiff's employment, the Federal Sector was comprised of two operating groups, including the Defense Group and the Civil Group. The Civil Group, which is headquartered in Falls Church, Virginia, consists of various business areas, including the Transportation Systems business area, which supports the Volpe National Transportation Systems Center contract (the "Volpe Contract").

6. CSC, along with a group of partner companies, won the Volpe Contract in 1997. Under the contract, CSC and the partner companies perform a variety of information technology

system services for the Department of Transportation's Volpe National Transportation Systems Center, located at 55 Broadway in Cambridge, Massachusetts ("55 Broadway"). Several companies, including Battelle, EG&G, Raytheon (replaced by Crown Consulting), PRC Litton (now PRC NG), and System Technology Associates, Inc. (now Systems International), partner with CSC to support the Department of Transportation in connection with the Volpe Contract.

### CSC's Control of Plaintiff's Terms and Conditions of Employment

7.   During her employment with CSC as a technical writer, Plaintiff was a member of the Documentation Group and reported to Mr. Todd and Mr. Butler.

8.   Although employees of various companies work on the Volpe Contract, CSC sets the terms and conditions of employment only for the CSC employees who work on the Volpe Contract. CSC provides periodic written performance evaluations and salary increases and makes decisions on training, transfers to other roles, and promotions only for the CSC employees who work on the Volpe Contract. CSC does not set the salaries of employees of other companies who work on the Volpe Contract, nor does CSC provide salary increases, performance reviews, training, or other promotions for these individuals.

9.   Plaintiff's beginning salary with CSC was $42,016.00 per year. Plaintiff received various salary increases and her final salary with CSC was $51,496 per year. Plaintiff received a 1.1% salary increase in December 1997 (a month after being hired); a 4.7% salary increase in May 1998; a 4.5% salary increase in May 1999; a 4.3% salary increase in May 2000; and a 6.2% salary increase in May 2001.

### CSC's Decision To Relocate The Technical Writers In The Documentation Group And Plaintiff's Refusal to Move

10.  In 2001, CSC realized that it was running out of office space at 55 Broadway in Cambridge, Massachusetts. To address the lack of available office space at 55 Broadway, in 2001, CSC was considering moving the technical writers in the Documentation Group from 55 Broadway to 5 Cambridge Center. The two buildings are approximately two blocks apart and

CSC had employees working in both buildings in 2001. CSC believed the move of the Documentation Group was necessary to accommodate additional programmers at 55 Broadway, since the principal computer is located at 55 Broadway and programmers require access to the principal computer to perform their job duties.

11. CSC ultimately decided to move the technical writers in the Documentation Group to 5 Cambridge Center. On February 7, 2002, Mr. Butler and I met with Plaintiff for approximately 45 minutes in Plaintiff's office to discuss the relocation of the Documentation Group. During our conversation, Plaintiff insisted that she would not move to 5 Cambridge Center. Mr. Butler and I asked Plaintiff to consider the consequences of her refusal to move and Mr. Butler gave Plaintiff a letter outlining the history of their discussions regarding the relocation. Mr. Butler and I also told Plaintiff that she would be able to perform her job duties from 5 Cambridge Center. Plaintiff persisted in her refusal to move. Accordingly, Mr. Butler and I informed Plaintiff that due to her refusal to move, CSC was considering Plaintiff to have resigned her position.

12. In or about February 2002, two of Plaintiff's Documentation Group co-workers relocated their offices from 55 Broadway to 5 Cambridge Center. The two co-workers who moved to 5 Cambridge Center from 55 Broadway included Mary Costello, an employee of Battelle, and Arthur Rubin, an employee of EG&G. Ms. Costello and Mr. Rubin are both white and neither has filed a claim against CSC. Jim Green, an employee of Battelle who had been part of the Documentation Group, did not move from 55 Broadway to 5 Cambridge Center because he began working as a "retiree casual" on or about March 1, 2000, working only on an as-needed basis, and his employment with Battelle ended in May 2002. Rosanna Masciarelli, an employee of System Technology Associates, Inc. (now Systems International), began supporting the ETMS Documentation Group in an administrative capacity in August, 2001. Ms. Masciarelli worked at 5 Cambridge Center in 2001 and continued to work at 5 Cambridge Center after February 7, 2002. Ms. Costello did not retain an office at 55 Broadway. However, a desk was

set aside for Documentation Group members to use when they went over to 55 Broadway to download information from the computer located at 55 Broadway.

### Plaintiff's Failure To Hire Claim

13. I was involved in the posting of a technical writer job opening in CSC's Cambridge office in April, 2003, and the hiring of an individual to fill this position in June, 2003. The job opening was for a Senior Technical Writing Specialist position and was posted on several websites. When individuals posted resumes in response to this job opening, the resumes were posted to CSC's CareerSource website. Thereafter, they were supposed to be emailed to me. Although I recall receiving several resumes in response to this particular job posting, I do not recall receiving a copy of Plaintiff's resume. Moreover, I did not know that Plaintiff was interested in returning to work for CSC. Plaintiff did not call me about the position and I did not learn from anyone else that Plaintiff had an interest in the position. In any event, the individual hired for this position had a greater level education and more extensive computer skills than Plaintiff. In fact, the individual hired had a Bachelors Degree from Boston College, a Masters Degree in Technical and Professional Writing from Northeastern University, extensive technical experience creating and maintaining online Help files for both UNIX and Windows-based systems, and a greater level of graphics knowledge than Plaintiff. The individual hired worked at 5 Cambridge Center.

### Plaintiff's Charge of Discrimination

14. In or about April, 2001, Plaintiff filed a charge of discrimination against CSC with the Massachusetts Commission Against Discrimination ("MCAD") alleging that CSC discriminated against her based on her race. In April, 2001, Plaintiff was the only technical writer working in the Documentation Group who was employed by CSC. In response to Plaintiff's charge of discrimination, CSC submitted a position statement on or about May 17, 2001, in which CSC denied Plaintiff's allegations of discrimination. On May 14, 2001, I attended the investigative conference held in connection with Plaintiff's MCAD charge along

with Jacqueline Newstadt, CSC's Employee Relations Manager, and Mr. Todd. Subsequent to the investigative conference, on or about March 4, 2003, the MCAD issued a dismissal of Plaintiff's charge. A true and accurate copy of the MCAD dismissal notice is attached hereto as Exhibit A.

### Neither Plaintiff's Race Nor Her Charge of Discrimination Had Any Bearing Upon Decisions Made

15. The decision to relocate the Documentation Group from 55 Broadway to 5 Cambridge Center had nothing to do with Plaintiff's race or her charge of discrimination against CSC. Moreover, the decision to consider Plaintiff's refusal to move as a voluntary resignation had nothing to do with Plaintiff's race or her charge of discrimination against CSC. Further, the decision to hire an individual other than Plaintiff for an open technical writer position in 2003 had nothing to do with Plaintiff's race or her charge of discrimination against CSC.

Signed under the pains and penalties of perjury this 30th day of March, 2005

/s/ Patricia L. Skiles
Patricia L. Skiles

### CERTIFICATE OF SERVICE

This is to certify that on March 30th, 2005, a copy of the foregoing document was served upon Plaintiff, Ruth Anthony, 60 Edgewood Street, Roxbury, MA, 02119 by first class mail, postage prepaid.

/s/ Heather L. Stepler
Jackson Lewis LLP

# EXHIBIT A

MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION
ONE ASHBURTON PLACE, ROOM 601, BOSTON, MA 02108
(617) 727-3990

### -DISMISSAL and NOTIFICATION of RIGHTS-

TO: Ruth Anthony
60 Edgewood St
Boston, MA 02119

Case: Anthony v. Computer Sciences
Docket No: 01130870
EEOC No: 16CA11320
Investigator: Katherine M. Martin, Esq.

MAR 0 4 2003

Your complaint has been dismissed for the following reasons:

[ ] The facts you allege fail to state a claim under any of the statutes the Commission enforces.

[ ] Respondent employs less than the required number of employees

[ ] Your complaint was not timely filed with the Commission, i.e. you waited too long after the date(s) of the alleged discrimination to file. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[ ] You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conference, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your complaint. You have had more than 30 days in which to respond to our written request.

[ ] The Commission's efforts to locate you have been unsuccessful. You have had at least 30 days in which to respond to a notice sent to your last known address.

[ ] The Respondent has made a reasonable settlement, offering full relief for the harm you alleged. 30 days have expired since you received actual notice of this settlement offer.

[X] The Commission issues the following determination. Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes a violation of the statutes. This does not certify that the Respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this complaint.

### -NOTICE of APPEAL-

If you wish to appeal the dismissal of your complaint and believe that the above stated reason for dismissal is incorrect, you may appeal to this Commission within 10 days after receipt of this notice. You or your attorney must make your appeal of the dismissal in writing to the appeals clerk of this Commission. **Attention: Ms. Nancy To.**

All employment complaints, where applicable, were filed by the MCAD with the Equal Employment Opportunity Commission. Our finding, which will be forwarded to its area office, JFK Federal Building, Boston, MA will be given substantial weight provided that such findings are in accordance with the requirements of Title VII of the Civil Rights Act of 1964, the ADEA, and/or the ADA, as amended.

Walter J. Sullivan, Jr., Esq.
Investigating Commissioner

3/3/03
DATE

Cc: Jacqueline Newstadt
   Sr. Manager Employee Relations
   Computer Services Co
   Federal Sector-Civil Group
   8101 Sandy Spring Road
   Laurel MD 20707

DEF00155

# MEMORANDUM

TO: File
FR: Katherine M. Martin, Esq., Supervisor
CASE: Anthony v. Computer Service Corp
MCAD NO: 01130870
EEOC NO: 16CA11320
EMPLOYEES: 15+

## RECOMMENDATION FOR DISMISSAL OF THE COMPLAINANT

### ISSUES INVESTIGATED:

On April 4, 2001 the Complainant filed a complaint with this Commission alleging that she had been discriminated against because of her race and color, Black, in that she was by passed for a promotion, that she was the lowest paid employee and that she was required to perform tasks that similarly situated employees were not in violation of Massachusetts General Laws, Chapter 151B, Section 4, Paragraph 1 and Title VII of the 1964 Civil Rights Act as amended.

The Complainant has articulated a prima facie complaint for discrimination based on race. The Complainant asserts that Mary Costello, white female, was afforded better treatment and was promoted despite her inferior skill set.

### SUMMARY OF FINDINGS:

The Complainant was hired as a Senior Member of the Technical Staff. She was employed as a technical writer and editor. The Complainant was the Respondent's only employee at this site. The Complainant's comparator, Mary Costello, was employed by another corporation and therefore, the Respondent had no control over Costello's rate of pay or job title. The Complainant could not have been promoted because the position was not within the control of the Respondent.

The Respondent has consistently rated the Complainant's work as very high and stated that she is a valued employee. The Complainant's assertion of constructive discharge must fail since she refused to move without just cause. The space was reconfigured and the Respondent had only marginal say in the matter. Even if there had been more control, the Complainant has failed to articulate a link between her race and the move. Costello cannot be a valid comparator as another employs her.

### CONCLUSION:

For the foregoing reasons, a lack of probable cause finding is recommended.

Katherine M. Martin, Esq.
Compliance Officer III