UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RUTH ANTHONY,

    Plaintiff,

v.

RALPH BUSBY, JOHN BUTLER, MARV TODD, JACQUELINE NEWSTADT, PATTI SKILES, and COMPUTER SCIENCES CORPORATION,

    Defendants.

Civil Action No. 03-cv-12423-RWZ

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS**

Defendants, Computer Sciences Corporation, Ralph Busby, John Butler, Marvin Todd, and Patricia Skiles, submit this memorandum of law in support of their motion for summary judgment pursuant to Fed. R. Civ. P. 56.[1] There are no genuine issues of material fact and Defendants are entitled to judgment on Plaintiff's claims as a matter of law. This memorandum, Defendants' Rule 56.1 Statement of Material Facts Not In Dispute and the Declarations of Patricia Skiles and Joan Ackerstein are submitted in support of Defendants' motion.

### Introduction

Plaintiff, Ruth Anthony, filed this action in or about November 2003, challenging her separation from employment at Computer Sciences Corporation ("CSC"). Plaintiff worked for CSC as a technical writer in the Documentation Group from November, 1997 until February 7, 2002, when she refused to relocate to a building two blocks away with the other technical writers. CSC had numerous communications with Plaintiff over approximately eight months to discuss the move, including communications advising her that her new office had been identified

---

[1] To date, Plaintiff has not completed service upon Jacqueline Newstadt. Accordingly, Ms. Newstadt has not joined in this motion.

and suggesting that she visit it. CSC also cautioned Plaintiff that her continued refusal to move would be considered a job abandonment. Despite that notice, Plaintiff persisted in her refusal to relocate. On February 7, 2002, after a meeting in which Plaintiff reiterated to CSC her refusal to relocate, CSC informed Plaintiff that it considered her refusal to move a voluntary resignation and Plaintiff executed documents to that effect. In her Complaint, Plaintiff characterizes her refusal to relocate a discharge and alleges that the discharge was based upon her race and color and was in retaliation for filing a charge of discrimination in April, 2001, a charge which was dismissed by the Massachusetts Commission Against Discrimination.

Plaintiff's *pro se* Complaint appears to contain four different claims. She alleges that: (1) Defendants engaged in race discrimination by denying her benefits afforded to a white co-worker, Mary Costello, and (2) by terminating her employment in violation of M.G.L. c. 151B, §4, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. §1981; (3) that she was discharged in retaliation for filing a charge with the Massachusetts Commission Against Discrimination ("MCAD") in violation of M.G.L. c. 151B, §4; and (4) she was not rehired after she posted her resume on a CSC internet site in March, 2003, due to retaliation.

Defendants now move for summary judgment on all counts, stating that there are no genuine issues of material fact in dispute and that Plaintiff's claims of race discrimination and retaliation fail as a matter of law.

## ARGUMENT

### I.    **Summary Judgment Standard**

Summary judgment's role is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Thus, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When requesting summary judgment, the moving party "must put the ball in play, averring 'an absence of evidence to support the nonmoving party's case.'" Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex, 477 U.S. at 325). The opposing party must then point to some material factual dispute contained in the record to avoid summary judgment.

It is well-settled that the mere existence of some alleged factual dispute will not defeat a properly supported summary judgment motion:

> [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted . . . . In essence . . . the inquiry . . . is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-252 (1986).

Genuine issues of material fact cannot be conjured by a non-moving party who is merely speculating as to what evidence might be produced at trial. On issues where the nonmovant bears the burden of proof, he must present definite, competent evidence to rebut the motion. See Anderson, 477 U.S. at 256-257; Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000) ("'As to issues on which the summary judgment target bears the ultimate burden of proof, [he] cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute'"). This evidence "cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial." Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989); see also Petitti v. New England Tel. and Tel. Co., 909 F.2d 28, 31 (1st Cir. 1990) (nonmovant cannot rest "merely upon unsupported allegations and speculations").

Summary judgment is often appropriate in employment discrimination cases where the party resisting judgment "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Feliciano de la Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1, 5 (1st Cir. 2000) (citation omitted); see also Zapata - Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 47 (1st Cir. 2002) (finding summary judgment for employer appropriate when plaintiff presents "weak issue of fact as to pretext" and there is "strong independent evidence that no discrimination occurred"); Matthews v. Ocean Spray Cranberries, 426 Mass. 122, 127 (1997) (summary judgment is appropriate in employment discrimination cases where the defendant's motion demonstrates that the plaintiff is "unable to offer admissible evidence of the defendant's discriminatory intent, motive or state of mind sufficient to carry the plaintiff's burdens and support a judgment in the plaintiff's favor"); Wooster v. Abdow Corp., 46 Mass. App. Ct. 665, 673 (1999) (granting summary judgment for employer and holding that in order for plaintiff alleging discrimination to survive Rule 56 motion, he "must show something more than a conflict in the evidence regarding the employer's legitimate, nondiscriminatory explanation for the employment decision and the plaintiff's membership in a protected group").

II. **Defendants Are Entitled To Summary Judgment On Plaintiff's Claim To The Extent It Alleges Discriminatory Discharge**

Although Plaintiff alleges that she was discharged on February 7, 2002 and that she was discharged due to her race, there is no evidence to support such a finding. The law governing employment discrimination actions in a case like this, where there is no claim of direct evidence of discrimination, is well-settled. A plaintiff in a discrimination suit bears the ultimate "burden of proving that his [status in a protected category] was the determinative factor in his discharge, that is, that he would not have been fired but for [that status]." Freeman v. Package Machinery Co., 865 F.2d 1331, 1335 (1st Cir. 1988).

4

Assuming, arguendo, that Plaintiff could establish a *prima facie* case of race discrimination, the burden then shifts to CSC to articulate a legitimate nondiscriminatory reason for the employment decision. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003) (the well-established McDonnell Douglas burden shifting framework is applied when evaluating discrimination claims under Title VII and M.G.L. c. 151B).[2] CSC's burden is merely a burden of production as the burden of persuasion remains with Plaintiff. The First Circuit has explained the employer's burden as follows:

> The defendant's burden to "articulate" a legitimate reason is *not* a burden to persuade the court that he was in fact motivated by that reason and not by a discriminatory one. "Rather, it is a burden of *production – i.e.,* a burden to *articulate or state* a valid reason.". . . The defendant can accomplish this by introducing "admissible evidence which would allow the trier of facts rationally to conclude that the employment decision had not been motivated by a discriminatory animus."

Johnson v. Allyn & Bacon, Inc., 731 F.2d 64, 70 (1st Cir.), cert. denied, 469 U.S. 1018 (1984).

As a preliminary matter, CSC disputes Plaintiff's characterization of her separation as a discharge since it contends Plaintiff voluntarily abandoned her job when she chose not to relocate. More significantly, even if Plaintiff could establish a *prima facie* case of discrimination on her termination claim by establishing that she was, in fact, terminated, CSC has dispelled any inference of discriminatory intent by articulating a legitimate, nondiscriminatory reason for its decision to consider Plaintiff to have resigned her employment.

That decision to consider Plaintiff as having resigned was based on Plaintiff's refusal to relocate her office to an office building located at 5 Cambridge Center in Cambridge, two blocks

---

[2] The three-step analysis applied in discrimination cases based on alleged violations of Title VII parallels that applicable to alleged violations of M.G.L. c. 151B. See Joyal v. Hasbro, Inc., 380 F.3d 14, 16 (1st Cir. 2004) ("Massachusetts case law uses a burden-shifting device akin to federal law to force the employer to supply reasons for his action once an easily made *prima facie* case is established.").

from 55 Broadway where she was then working. Plaintiff learned of the plans for the move at least by June 22, 2001, over seven months prior to her separation from employment, when she received an email from John Butler. (Pl. Tr. 87-89)[3] In the ensuing months, Plaintiff received periodic updates regarding the upcoming move, including an email from John Butler on October 22, 2001 to Plaintiff, two other technical writers and an administrative assistant, advising them they would be moving and asking that they pick furniture for their new offices. (Pl. Tr. 90-91) Plaintiff responded with an e-mail to John Butler, her supervisor's supervisor, stating:

> I just received an E-mail message regarding office furniture for a 5 Cambridge Center. It states that I will be moving to that location sometime in the future. Please let me know when this move is expected to take place. I would also like to know the plan for conducting my work. What types of assignments are planned for me, will the group organization change, if so how?

Id. Plaintiff also received an e-mail from Jon Johnson on January 9, 2002. (Pl. Tr. 96) In that e-mail, with the subject "New Office at 5 Cambridge," Mr. Johnson wrote, "Hi Ruth. Your office and phone over here are ready for you." Id. In fact, Plaintiff acknowledged that the office at 5 Cambridge Center was a nice office, with a nice view and larger then her office at 55 Broadway. (Pl. Tr. 96)

Plaintiff expressed her resistance to the move in a conversation with John Butler and Marvin Todd in January 2002, and followed up that conversation with an email to Mr. Butler and Mr. Todd on January 17, 2002. (Pl. Tr. 99)

On January 29, 2002, Plaintiff had a telephone conversation with Jacqueline Newstadt, CSC's Employee Relations Manager. Ms. Newstadt cautioned Plaintiff that if she failed to move, CSC would consider Plaintiff's failure to move as job abandonment. (Pl. Tr. 111) Plaintiff summarized her conversation with Ms. Newstadt in an email, including Ms. Newstadt's

---

[3] Reference is to the transcript of Plaintiff's deposition taken on November 23, 2004. True and accurate copies of excerpts of that deposition are attached to the Declaration of Joan Ackerstein as Exhibit A.

6

cautionary statement that Plaintiff's continued refusal to move would be considered job abandonment. (Pl. Tr. 110-112) As Plaintiff wrote:

> Thank you for your Employee Assistance call today. I regret that you feel my concerns regarding the move to Five Cambridge Center lacks substance.
>
> As I told you, from Cambridge Center I am unable to perform my job efficiently as a technical writer, with no access to the software or project team....
>
> You said CSC has no grievance procedure and if I do not move you will consider that job abandonment and I will have to find another job elsewhere. I explained that I am not abandoning the job but believe CSC is hindering me from doing my job.

(Pl. Tr. 108-112; Ackerstein Dec., Exhibit J)

Even after receiving the employee assistance call from Ms. Newstadt, Plaintiff persisted in her refusal to move. Mr. Butler and Ms. Skiles met with Plaintiff on February 7, 2002 to discuss the move and to attempt to convince Plaintiff to change her position regarding the move. (Skiles Dec., ¶11) They also gave Plaintiff a letter explaining that the move was due to a lack of space at 55 Broadway and pointing out that the other technical writers were moving. (Skiles Dec., ¶11; Ackerstein Dec., Exhibit L) The letter further explained the consequences of Plaintiff's continued refusal to move. (Skiles Dec., ¶11) Plaintiff read the letter in the presence of Mr. Butler and Ms. Skiles, yet she refused to relent, insisting that she would not move. (Pl. Tr. 112-113) Due to her continued refusal to move, CSC considered Plaintiff to have voluntarily resigned her position and informed Plaintiff that her employment with CSC had ended. (Pl. Tr. 113-114; Skiles Dec., ¶11)

CSC has met its burden of articulating a legitimate, nondiscriminatory reason for the action about which Plaintiff complains: considering Plaintiff's refusal to move to be a voluntary resignation. See, e.g., Benoit, 331 F.3d at 174 (persistent tardiness, frequent absences, and

unwillingness to work cooperatively with supervisor is a legitimate, nondiscriminatory reason for employer's action); Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 20 (1st Cir. 1999) (unsatisfactory performance is a legitimate, nondiscriminatory reason for employer's action ).

In her claim, Plaintiff attempts to allege disparate treatment regarding the relocation but she has no basis for that allegation. Indeed, Plaintiff admitted at her deposition that she has no idea whether Documentation Group members moved to 5 Cambridge Center or remained in the Volpe Center, when she testified as follows:

> Q. You knew Mary Costello was going to have an office at 5 Cambridge Center, didn't you?
> A. She said she was going to have one there and one in the Volpe Center.
> Q. Mary Costello was going to have an office at 5 Cambridge Center, and Jim Green was retiring.  Why did you think you were the only one going?
> A. Because I was.  She probably still is in the Volpe Center. They probably all still are.
> Q. You don't know where anybody is today, do you?
> A. No.

(Pl. Tr. 100)

Despite Plaintiff's skepticism as to whether Ms. Costello moved to 5 Cambridge Center, the evidence clearly shows that she did move and that she continues to work at 5 Cambridge Center today. (Skiles Dec., ¶12)  The evidence further shows that Ms. Costello did not retain an office at 55 Broadway. (Skiles Dec., ¶12)  Indeed, there was a desk set aside for all ETMS Documentation Group members to use when they went over to 55 Broadway to download information from the Volpe Center computers. (Skiles Dec., ¶12)

Moreover, Plaintiff admitted that other white ETMS staff members had moved from 55 Broadway to 5 Cambridge Center during her employment, further dispelling any inference of

discrimination or disparate treatment. With regard to the move of other ETMS staff members to 5 Cambridge Center, Plaintiff testified as follows:

> Q. . . . Before you were told to move to 5 Cambridge Center, you had seen other people from the ETMS team move from the Volpe Center to 5 Cambridge Center, and then their employment ended at some point; that's what you had observed in the past?
> A. Yes, soon after.
> Q. Was that a concern that you had? Was that a reason you didn't want to go to 5 Cambridge Center, because you thought your employment was going to end?
> A. That was part of it, too.
> Q. As you sit here today, you can't tell me who moved from the Volpe Center to the Cambridge Center before you? You just remember that some people went?
> A. Yes, and as soon as they went over there, they left like within a week or two, or within a month.
> Q. I assume those people were white?
> A. Yes.

(Pl. Tr. 102)

Plaintiff has failed to cast doubt upon CSC's legitimate, nondiscriminatory reason for her separation from employment and has failed to show discriminatory animus on behalf of CSC. Simply put, Plaintiff cannot show that CSC's actions in asking her to move and in considering her refusal to move were predicated upon the basis of her race. Rodriguez-Cuervos, 181 F.3d at 22 (granting summary judgment for employer where employee failed to present evidence that his demotion was predicated on the basis of his race or national origin). Accordingly, there is no genuine issue of material fact with respect to Plaintiff's race discrimination claims and, therefore, her claims fail as a matter of law.

Here, to make a claim of discriminatory discharge, Plaintiff needs to show both that she was discharged and that the discharge was discriminatory. The fact is that Plaintiff cannot make either showing. CSC wanted Plaintiff to remain employed. CSC had an office waiting for

9

Plaintiff at 5 Cambridge Center and asked her to select the furniture to be moved and to visit the office. Plaintiff acknowledged that it was a nice office with a nice view and larger than the one she currently had. CSC urged Plaintiff to relocate, as the other technical writers did, but she was unwilling to do so. Further, she was specifically warned that if she did not go, the refusal would be treated as job abandonment. There simply is no basis for a finding of discriminatory discharge on these facts.

### III.    Defendants Are Entitled To Judgment On Plaintiff's Claim of Discriminatory Treatment

Plaintiff bases her claim of race discrimination with respect to her treatment during her employment on her belief that Mary Costello, a fellow Documentation Group member, received training, a promotion, and a higher salary and that Plaintiff was denied such benefits due to her race. (Pl. Tr. 73) Ms. Costello, however, was not a CSC employee.[4] (Pl. Tr. 64; Skiles Dec., ¶12) Although she was part of the ETMS Documentation Group, Ms. Costello's employer was Battelle. (Pl. Tr. 64; Skiles Dec., ¶12) Accordingly, CSC had no control over Ms. Costello's terms and conditions of employment, including her receipt of training, a promotion, and an allegedly higher salary. (Skiles Dec., ¶8)

To meet her burden and succeed in a race discrimination claim, Plaintiff must "identify and relate specific instances where persons similarly situated 'in all relevant aspects' were treated differently." Matthews, 426 Mass. at 129 (citations omitted). It is fundamental, however, "that '[a] claim of disparate treatment based on comparative evidence must rest on proof that the proposed analogue is similarly situated in all material respects.'" Rodriguez-Cuervos, 181 F.3d at 21 (citations omitted) (plaintiff could not compare himself to employee who was evaluated by different supervisor over different period of time and for a different store). While the

---

[4] Ms. Costello is the only employee on whom she bases this claim of unfair treatment. Id.

10

comparison cases need not be "perfect replicas," the test is whether a prudent person looking at them objectively would conclude that the protagonists were similarly situated. Id. at 21. Further, a plaintiff bears the burden of showing that the person with whom he seeks to be compared has been subject to the same standards. Id. at 21.

Plaintiff simply fails to compare herself to a similarly situated person. Rather than comparing herself to a CSC employee, Plaintiff compares herself to Ms. Costello, a non-similarly situated person. Plaintiff does not show that Ms. Costello was a CSC employee or that CSC controlled the terms and conditions of her employment. Indeed, Plaintiff admitted that Ms. Costello was employed by Battelle, not CSC. (Pl. Tr. 64) Moreover, Plaintiff admitted that she did not know who decided to promote Ms. Costello and that she was not aware of Ms. Costello's salary. (Pl. Tr. 72-74, 80) At her deposition, Plaintiff testified about her understanding of Ms. Costello's employment as follows:

> Q. Let me see if I understand this. You brought a claim at the Mass. Commission Against Discrimination because you felt that Ms. Costello got a promotion and got training that you didn't get?
> A. Yes, and probably other people, too. I didn't even know. They did things and didn't even tell me. I didn't even know. I didn't even know people could be promoted because I never heard of anybody being promoted, but that was not to say that they were not promoted.
> Q. Is there anybody that you are saying you are aware of who got training or a promotion that you think you should have gotten other than Ms. Costello?
> A. No.
> . . .
> Q. You don't know, though, who made the decision to promote her, do you?
> A. No.
> . . .
> Q. It says that you were the only black technical writer out of four. Who were the four in April of 2001?

11

>   A.  Okay, I guess the four that I named before, Michael Potash, I guess he was still there, so Michael Potash, James Green, Mary Costello, and myself.
>   Q.  You say you are the lowest paid employee for the same or similar work. Do you know what any of these three people were making?
>   A.  No.

(Pl. Tr. 72-74, 79-80). Moreover, Plaintiff does not have knowledge that anyone at CSC had responsibility for Ms. Costello's training or benefits. (Pl. Tr. 72-74)

Plaintiff's testimony further reveals that her claim is based on mere supposition, rather than on facts which support her belief that she was unfairly denied training, a promotion, and a higher salary.[5] Significantly, when Plaintiff was asked whether she had any basis for her claims other than her own beliefs, Plaintiff testified as follows:

>   Q.  Are you basing this on anything other than it makes sense to you?
>   A.  It makes sense to me. Or that's a question. This is what I'm saying about when I ask questions. When I ask questions, everybody like backs off, and I never can get a clear answer. I think I have the right to know.
>   Q.  Well, you heard an answer. I mean, it's accurate, is it not, that you were told that Ms. Costello didn't work for CSC and that somebody other than CSC was making decisions about her; you've been told that, haven't you?
>   A.  Well, I have seen it in their response, yes.

(Pl. Tr. 74-75).

Plaintiff does not attempt to establish that she was treated differently than other CSC employees. Further, any notion that CSC's explanation for the reason why Plaintiff did not receive the same benefits as Ms. Costello is undermined by the undisputed evidence – including Plaintiff's own deposition testimony – that Ms. Costello was not employed by CSC. (Pl. Tr. 64;

---

[5] Plaintiff's claim of unfair treatment based upon the benefits received by Mary Costello mirrors allegations in a prior lawsuit brought against another employer, Charles T. Main. See Ackerstein Dec., Ex. S. In her lawsuit against Charles T. Main, Plaintiff claimed that a female co-worker received training, a higher salary and better terms and conditions of employment.

12

Skiles Dec., ¶12) Summary judgment should be entered for CSC on Plaintiff's claim of race discrimination on the basis that she was denied benefits Ms. Costello received because Plaintiff has not produced any evidence which could give rise to an inference of pretext. Benoit, 331 F.3d at 174 (affirming summary judgment for employer where plaintiff alleging race discrimination failed to produce evidence of pretext because he did not show that similarly situated employees were treated differently).

IV.   **Defendants Are Entitled to Judgment On Plaintiff's Claim of Retaliation**

Section 4(4) of M.G.L. c. 151B and 42 U.S.C § 2000(e) of Title VII set forth the basis for a claim of retaliation, providing that an employer may not "discharge, expel or otherwise discriminate against any person because he has . . . filed a complaint." Sullivan v. Raytheon Co., 262 F.3d 41, 48 (1st Cir. 2001), cert. denied, 534 U.S. 1118 (2002). In order to establish a *prima facie* case for retaliation under M.G.L. c. 151B §4(4), a plaintiff must show that: (1) the plaintiff engaged in protected conduct; (2) the plaintiff suffered an adverse employment action at the time or after protected conduct occurred; and (3) a causal connection existed between the protected conduct and the adverse action. Sullivan, 262 F.3d at 48; Mole v. University of Massachusetts, 442 Mass 582, 591-92 (2004).

As an initial matter, Defendants are entitled to summary judgment because Plaintiff cannot establish a *prima facie* case of retaliation. Plaintiff cannot show the requisite causal link between her protected activity and her separation from employment. To prove causation, a plaintiff must establish that "but for" engaging in the protected conduct the defendant would not have taken the adverse action. Cathey v. Fallon Clinic, 13 Mass. L. Rep. 325, 2001 Mass. Super. LEXIS 237 (July 2, 2001) (no causal connection where plaintiff's protected activity occurred after the alleged adverse employment action). The fact that the adverse action followed the protected activity is not sufficient to show the requisite causal link. Mole, 442 Mass. at 592.

Further, a plaintiff's subjective feelings that retaliation occurred without objective evidence is not sufficient proof of retaliation. See MacCormack v. Boston Edison Co., 423 Mass. 652, 664 (1996) (plaintiff failed to establish a *prima facie* case when he offered only subjective feelings of disappointment rather than substantial evidence of harm).

Plaintiff has not shown a causal connection between her filing of a discrimination claim with the MCAD in April, 2001, and her subsequent separation as a result of her refusal to move on February 7, 2002. The fact is that CSC made a decision to move the technical writers to 5 Cambridge Center, repeatedly requested Plaintiff to move and she refused to do so.

Plaintiff has not offered any evidence to support her claim that her separation resulted from her protected activity. Indeed, Plaintiff bases her claim merely upon her subjective belief that the two are connected. (Pl. Tr. 119-120)

## V. Defendants Are Entitled To Judgment On Plaintiff's Failure to Hire Claim

Plaintiff also claims she was retaliated against when she applied for a position with CSC and was not hired. That claim fails as well for two reasons.

### A. There is No Basis for Plaintiff's Failure To Hire Claim

Plaintiff claims she posted her resume once on the internet in 2003. She did not pick up the telephone and call anyone at CSC to say she was interested in a position. Plaintiff did not call Ms. Skiles, Ms. Newstadt, Mr. Butler, Mr. Busby or Mr. Todd to let them know she had an interest in working at CSC. (Pl. Tr. 161-163)

The facts are that Ms. Skiles, who handled the hiring at CSC in Cambridge, was not aware that Plaintiff put her resume on the internet or that she was interested in a position. (Skiles Dec., ¶13) Furthermore, CSC hired only one individual into the group in 2003, an employee who began in June 2003, and had greater skills and education than Plaintiff in any event. (Skiles Dec., ¶13) In addition to a B.S. from Boston College, the employee had a Masters Degree in

Technical and Professional Writing from Northeastern University. (Skiles Dec., ¶13) He also had a broader range of technical skills than Plaintiff. (Skiles Dec., ¶13) Further, contrary to Plaintiff's notion that she was the only technical writer being asked to relocate to 5 Cambridge Center, the employee hired in June 2003, worked from an office at 5 Cambridge Center during his employment with CSC. (Skiles Dec., ¶13) The fact is that there is simply no basis for a contention that she was not rehired as a result of retaliation.

### B. Failure to Exhaust Administrative Remedies

On April 4, 2001, prior to her separation from CSC, Plaintiff filed a claim of discrimination at the MCAD alleging discriminatory treatment by CSC. (Ackerstein Dec., Exhibit N) The MCAD issued a dismissal of Plaintiff's charge against CSC on or about March 4, 2003. (Skiles Dec., Exhibit A)

On May 7, 2003, two months after the dismissal of her MCAD charge, Plaintiff posted a resume on the internet, seeking a position at CSC. (Complaint, ¶24) She now claims that the failure to rehire her was retaliatory. While there is no evidence to support that claim, Defendants are entitled to judgment on the failure to rehire claim for the additional reason that Plaintiff did not first file a charge at the MCAD detailing this claim as she was required to do. M.G.L. c. 151B, §5.

## VI. The Individual Defendants Are Entitled To Judgment On Plaintiff's Claims

### A. There Is No Basis For Assessment Of Liability Against The Individual Defendants

In addition to the underlying failings in Plaintiff's claims, it is clear that the individually-named defendants who have been served (Mr. Busby, Mr. Butler, Mr. Todd, and Ms. Skiles) are entitled to summary judgment on Plaintiff's discrimination claims because Plaintiff has no basis for seeking to impose personal liability against them.

It is well-settled that Title VII of the Civil Rights Act of 1964 does not permit the imposition of personal liability against individual managers or employees. See Healy v. Henderson, 275 F.Supp.2d 40, 44-45 (D. Mass. 2003) (joining the eleven other circuit courts which have concluded that Congress did not intend to impose individual liability upon agents of an employer); see also Delelegne v. Kinney System, Inc., 2004 U.S. Dist. LEXIS 10565, n.18 (June 10, 2004) (dismissing Title VII claims against individual defendants).[6] As the Healy court reasoned, "the phrase 'and any agent of such a person,' was intended by Congress to establish traditional respondeat superior liability. That is, 'the phrase . . . simply means that an employer is liable for acts of those employees acting within the scope of their employment, but does not extend liability beyond the employer to the individual harasser.'" Healy, 275 F.Supp.2d at 45. Accordingly, Plaintiff's Title VII claims against the individual defendants should be dismissed as a matter of law.

Although Chapter 151B, §4(5)[7] has been interpreted as providing for individual liability under the theory of aiding and abetting, for Plaintiff to prevail on a claim of individual liability, she must prove that the individual defendants had the requisite intent to discriminate against her. See Beaupre v. Cliff Smith & Associates, 50 Mass. App. Ct. 480, 495 n. 23 (2000) (president of plaintiff's former employer individually liable for his separate acts of sexual harassment against plaintiff). Moreover, Plaintiff must also demonstrate (1) that wholly individual and distinct wrongs, separate from the main claim, were committed by the individual defendants; and (2) that the individual defendants knew of their supporting role in an enterprise designed to deprive Plaintiff of a right guaranteed under G.L. 151B. Vera v. Faust, 26 Mass. Discrim. L. Rep. 341,

---

[6] The First Circuit Court of Appeals has yet to address this issue.
[7] Chapter 151B, §4(5) states that it is an unlawful practice "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so."

346 (2004) (Single Comm'r) (plaintiff's former supervisor may be individually liable under aiding and abetting theory for encouraging and fostering work environment hostile to women, lesbians, and their supporters). For Plaintiff to succeed, there must be "direct evidence of intent to discriminate, or sufficient circumstantial evidence to permit a reasonable fact finder to conclude that the aider/abettor possessed the requisite intent and knowledge of the unlawful enterprise to render himself liable under an accessory liability theory." Vera, 26 Mass. Discrim. L. Rep. at 346.

Plaintiff cannot establish liability under G.L. c. 151B, §4(5) since she cannot show that the individual defendants shared an intent to discriminate against her. Indeed, Plaintiff testified at her deposition that she liked the individual defendants, "there's nothing personal with any of the defendants," and that her claims against them are merely based on their roles with CSC and the fact that she was terminated. (Pl. Tr., pp. 152, 155-56) Moreover, Plaintiff has offered no evidence to show that the individual defendants knew of their supporting role in an unlawful enterprise or that the individual defendants committed individual or distinct wrongs separate from the underlying claims against CSC. Accordingly, the federal and state claims against the individual defendants should be dismissed as a matter of law.

    **B.    The Individual Defendants Are Entitled To Judgment Because Plaintiff Failed To Exhaust Administrative Remedies**

The Individual Defendants also are entitled to summary judgment because Plaintiff failed to exhaust her administrative remedies at the Massachusetts Commission Against Discrimination ("MCAD") as required by Massachusetts law. Specifically, Plaintiff failed to name any of the Individual Defendants as respondents in the charge she filed with the MCAD as required by M.G.L. c. 151B. As a result, her complaint should be dismissed as to the Individual Defendants. Butner v. Dep't of State Police, 60 Mass. App. Ct. 461, 467, 803 N.E.2d 722, review denied, 441

Mass. 1105 (2004) (plaintiffs' Massachusetts Civil Rights Act claim against medical defendants, which appears to have been refashioned into MCRA claims to avoid c. 151B exclusivity provisions, was barred because plaintiffs failed to first pursue an MCAD remedy against the medical defendants); Powers v. H.B. Smith Co., 42 Mass. App. Ct. 657, 667, 679 N.E.2d 252 (1997) (discrimination claim against company named for first time in lawsuit barred because plaintiff did not name company in MCAD charge).

In reviewing this particular procedural issue, this Court has concluded that if the Massachusetts Supreme Judicial Court was faced with this issue, it would set forth an exception to the procedural requirement where an unnamed party's conduct was put at issue by the charge and the party had notice of and an opportunity to conciliate the charge.[8] Chatman v. Gentle Dental Center of Waltham, 973 F. Supp. 228, 235 (D.Mass. 1997) (dismissing c. 151B and Title VII claims against individual defendants where issue of individual defendants' conduct put at issue in MCAD charge but there was no evidence that individual defendants had notice of the charge and opportunity to conciliate). However, the exception does not apply in this case. In her MCAD charge, Plaintiff named only CSC as a respondent. Further, in the particulars of her charge, Plaintiff failed to name the Individual Defendants or any conduct of the Individual Defendants.[9] Because Plaintiff failed to name the Individual Defendants in her charge and failed

---

[8] The Massachusetts Appeals Court has recognized that Chatman sets forth an exception to the requirement of naming a party in an MCAD charge prior to filing a lawsuit against that party, but has not adopted the exception. Butner, 60 Mass. App. Ct. at n.14; King v. First, 46 Mass. App. Ct. 372, 374, 705 N.E.2d 1172 (1999) (court granted landlord's motion for summary judgment because plaintiff failed to name the landlord in his MCAD housing discrimination complaint and there was no showing the landlord had notice of or participated in administrative proceedings).

[9] In Plaintiff's three-page supplement to her charge, Plaintiff failed to name the Individual Defendants and appears to have vaguely mentioned by title only Mr. Todd and Mr. Butler. However, Plaintiff's minimal mentions to Mr. Todd and Mr. Butler did not directly put their conduct at issue; rather the references allude to CSC's lack of control over employees of other companies, Mr. Todd's Good rating of Plaintiff's performance, and a conversation with Plaintiff about another writer's position

to put conduct of the Individual Defendants at issue in her charge, the Court should grant summary judgment for the Individual Defendants.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion for Summary Judgment on all counts of the Complaint.

Respectfully submitted,

COMPUTER SCIENCES CORPORATION, RALPH BUSBY, JOHN BUTLER, MARVIN TODD, and PATRICIA SKILES,

By their attorneys,

/s/ Joan Ackerstein
Joan Ackerstein, BBO #348220
Heather L. Stepler, BBO #654269
Jackson Lewis LLP
75 Park Plaza
Boston, MA 02116
Dated: March 30, 2005            (617) 367-0025

## CERTIFICATE OF SERVICE

This is to certify that on March 30, 2005, a copy of the foregoing document was served upon Plaintiff, Ruth Anthony, 60 Edgewood Street, Roxbury, MA, 02119 by first class mail, postage prepaid.

/s/ Heather L. Stepler
Jackson Lewis LLP