# EXHIBIT K

 "Anthony, Ruth (CSC)" <Anthony@VOLPE.DOT.GOV> on 01/29/2002 06:34:03 PM

To:      Jacqueline Newstadt/CORP/CSC@CSC
cc:
Subject:  Move

Dear Jacqueline,

Thank you for your Employee Assistance call today. I regret that you feel my concerns regarding the move to Five Cambridge Center lacks substance.

As I told you, from Cambridge Center I am unable to perform my job efficiently as a technical writer, with no access to the software or project team. I am the only CSC employee directed to move from the Volpe Center, although I am required to continue documenting the Enhanced Traffic Management System (ETMS) project, which is managed, developed, tested, and maintained in Volpe.

You said CSC has no grievance procedure and if I do not move you will consider that job abandonment and I will have to find another job elsewhere. I explained that I am not abandoning the job but believe CSC is hindering me from doing my job.

EXHIBIT
#8
CC-83-0
anthony

# EXHIBIT L

*SSN*

*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*

February 7, 2002

Ms. Ruth Anthony
60 Edgewood Street
Roxbury, Massachusetts 02119

Dear Ms. Anthony:

As you know, Computer Sciences Corporation's Volpe Project operates in two buildings: at Five Cambridge Center, and across the street at the U.S. Department of Transportation's Volpe Center where you currently work. Recently, CSC selected the documentation group, of which you are part, to relocate from the client site to the Cambridge Center due to space constraints. You and your two documentation group coworkers are scheduled to move to your new offices this week.

When informed of this management decision several weeks ago, you stated your refusal to move across the street. Employee Relations Manager Jacqueline Newstadt then contacted you. When she inquired as to your reasons for this refusal, you stated that you would be unable to do your job from the Cambridge Center away from the project team. When asked for details in support of this conclusion, you stated that you couldn't give any. When Ms. Newstadt probed further, you stated your belief that you should not have to speak to the project developers via the telephone since at the Volpe Center they have been just down the hall. You were either unable or unwilling to provide Ms. Newstadt with further rationale for your refusal.

In your subsequent e-mail message to Ms. Newstadt, you stated that "...from the Cambridge Center I am unable to perform my job efficiently as a technical writer, with no access to the software or project team." This is not true. With telephone and e-mail communication, as well as the close proximity of the two buildings in question, the effect of the office relocation should be negligible. You will continue to have full access to the project team. Management has carefully considered the impact of the move on your team's ability to complete its work. Though you claim to be "singled out" in this relocation, this is also untrue. As you well know, the entire documentation team is moving. Again, the documentation group is moving due to the limited space allocated to CSC at the client site. I find no support for your statement in your email to Ms. Newstadt that you "...believe CSC is hindering [you] from doing your job."

As Ms. Newstadt and I have both conveyed to you, CSC has assigned you to perform your job from the Cambridge Center. Your refusal to relocate your office to that site, if you persist in this, will be taken as job abandonment, and CSC will consider you to have voluntarily quit our employ. I caution you to reconsider this refusal, unless you truly intend such a resignation of employment.

Sincerely,

*John Butler (signature)*

John Butler
Senior Manager
Enhanced Traffic Management System

cc: Massachusetts Commission Against Discrimination

EXHIBIT
#9
11-23-04
anthony

Federal Sector – Civil Group
245 First Street, Riverview I
Cambridge, Massachusetts 02142
617.374.2700

DEF00001

# EXHIBIT M

# TSS Contract Exit Clearance Form
## COMPLETION REQUIRED BY ALL EXITING EMPLOYEES

RECEIVED
FEB 11 2002

**Instructions:** The Exiting Employee (CSC, Subcontractor, or Unspecified) is responsible for obtaining the required signatures on this form prior to their separation date and providing the completed form to their Company Manager or CSC HR at their final exit interview.

**Employee Information (please print and complete in FULL)**
Name: __Ruth Anthony__   Your Company Name: _CSC_
Department Number: / _HOO_   Last Day of employment: _February 7, 2002_
Type of Separation: [X] Resignation   [ ] Transfer to: _____   [ ] Other: _____

**Release Authorization– Must be completed as indicated below:**

| Clearance | Date | Signature | Comments |
|---|---|---|---|
| Department Manager Signature | | Department Manager | |
| All TSSC Proprietary Data, Policy Manuals | | | |
| Department materials, documentation | | | |
| User IDs closeout (project ID, Lotus Notes ID) | | | |
| PC Equipment (Desktop, Laptop, Modem) | | | |
| Cell Phone | N A | | |
| Pager | N A | | |
| Keys (door, desk, other): | | | |
| Manuals, Periodicals | | | |
| Books | | | |
| Software | | | |
| Other: | | | |
| | | | |
| TSSC Training Manager Signature | | TSSC Training Manager | |
| Training Department CBTs /Training Videos | | | |
| Returned on _____ ,2001 | | | |
| Other | | | |
| | | | |
| Company Manager or CSC HR Signature | | Company Mgr or CSC HR | |
| Volpe Badge | | | |
| Card Key | | | |
| Volpe Parking Pass | 2/7 | | |
| 245 1st Street Parking Pass | 2/7 | | N A |
| Company HR Materials | | | |
| | | | |
| Department Administrator Signature | | Department Administrator | |
| VOLPE Final Checkout Record-reviewed | 2/7 | | |
| TSSC Contract Exit Clearance Form-reviewed | 2/7 | | |
| | | | |
| | | | |

I acknowledge that I have returned all property assigned to me as an employee on the TSS Contract with the exception of _____
which will be returned by_____/_____/_____.

Signature: _Ruth Anthony_   Date: _2, 7, 02_

EXHIBIT
#10
11-23-04
anthony

# EXHIBIT N

The Commonwealth of Massachusetts
Commission Against Discrimination
One Ashburton Place, Boston, MA 02108


Computer Sciences Corporation                                    04-04-2001
HUMAN RESOURCES
245 FIRST STREET
Cambridge, MA 02142

                        RE:Ruth Anthony
                        vs.:Computer Sciences Corporation
                        Docket No:01130870
                        EEOC/HUD No:

Dear Sir/Madam:

Please be advised that the Massachusetts Commission Against
Discrimination (MCAD) has received the above referenced complaint of
discrimination which alleges that you have committed an act of
discrimination. A copy of that complaint is enclosed.

State law requires the Commission to impartially review the
allegations in that complaint. The Commission has assigned one of
its staff, Edward Cassella, to investigate the complaint. This MCAD
investigator will keep the parties informed of developments arising
from that investigation.

State law requires that you submit a formal written answer to the
complaint in the form of a Position Statement. This written answer
~hould be submitted to MCAD Investigator within twenty-one (21) days
: receipt of this notification. A copy must also be forwarded to
the Complainant at the address listed on the enclosed complaint.

In order to reduce the time necessary to investigate and resolve
complaints of discrimination, the MCAD schedules an Investigative
Conference with the parties shortly after the complaint is filed.
Information about that Conference is included with this notice.

An Investigative Conference regarding the above complaint will be
held at the Commission's Offices, One Ashburton Place, Boston, MA
02108, at 10:30AM on 05-14-2001. You are required to attend this
Conference.

One important purpose of this Conference will be to determine
whether the parties are willing to consider a rapid, informal and
voluntary resolution of this dispute. The Commission encourages such
resolutions as an alternative to the often lengthy and expensive
litigation process.

If you have any questions pertaining to the Investigative
Conference, please,contact Edward Cassella at (617) 727-3990 Ext.
26079.

Sincerely,                                            994-6000

F~ ~ard Cassella
I. estigator

From: MCAD Complaint; Ltr.to.Resp

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

PERSON FILING CHARGE:
  Ruth Anthony
THIS PERSON (Check One):
  ( ) Claims to be aggrieved
  ( ) Is filing on behalf of
DATE OF ALLEGED VIOLATION:
  04/02/01

Computer Sciences Corporation
HUMAN RESOURCES
245 FIRST STREET
Cambridge, MA 02142

PLACE OF ALLEGED VIOLATION:
  BOSTON
EEOC CHARGE NUMBER:

FEPA CHARGE NUMBER:
  01BEM0870

NOTICE OF CHARGE OF DISCRIMINATION WHERE AN FEP AGENCY WILL INITIALLY PROCESS
          (See Attached Information Sheet For Additional Information)

YOU ARE HEREBY NOTIFIED THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

[ ] Title VII of the Civil Rights Act of 1964
[ ] The Age Discrimination in Employment Act of 1967 (ADEA)
[ ] The Americans Disabilities Act (ADA)

HAS BEEN RECEIVED BY
[ ] The EEOC and sent for initial processing to  MCAD

[X] The Mass. Commission Against Discrimination        (FEP Agency)
    (FEP Agency) and sent to the EEOC for dual filing purposes.

While the EEOC has jurisdiction (upon the expiration of any deferral
requirements if this is a Title VII or ADA Charge) to investigate this
charge, EEOC may refrain from beginning an investigation and await the
issuance of the Agency's final findings and orders. These final findings
and orders will be given weight by EEOC in making its own determination as
to whether or not reasonable cause exists to believe that the allegations
made in the charge are true.

You are therefore encouraged to cooperate fully with the Agency. All facts
and evidence provided by you to the Agency in the course of its
proceedings will be considered by the Commission when it reviews the
Agency's final findings and orders. In many instances the Commission will
take no further action, thereby avoiding the necessity of an investigation
by both the Agency and the Commission. This likelihood is increased by
your active cooperation with the Agency.

[X] As a party to the charge, you may request that EEOC review the final
    decision and order of the above named Agency. For such a request to be
    honored, you must notify the Commission in writing within 15 days of
    your receipt of the Agency's issuing a final finding and order. If
    the agency terminates its proceedings without issuing a final
    finding and order, you will be contacted further by the Commission.
    Regardless of whether the Agency or the Commission processes the
    charge, the Recordkeeping and Non-Retaliation provisions of Title VII
    and the ADEA as explained on the second page of this form apply.

For further correspondence on this matter, please use the charge number(s) shown.

[ ]   An Equal Pay Act Investigation (29 U.S.C 206(d) will be conducted by the Commission concurrently with the Agency's investigation of the charge.

[X]   Enclosure: Copy of the Charge

Basis of Discrimination:
( )Race      ( )Color      ( )Sex         ( )Religion      ( )National Origin
( )Age       ( )Disability ( )Retaliation ( )Other

Circumstances of alleged violation:
SEE ENCLOSED COPY OF THE CHARGE OF DISCRIMINATION (or EEOC FORM 5)

| Date | Type Name/Title of Authorized EEOC Official | Signature |
|------|----------------------------------------------|-----------|
| 04/04/01 | Robert L. Sanders, Director | |

Form:131

DEF00101

The Commonwealth of Massachusetts
Commission Against Discrimination

DOCKET NUMBER:01130870                                    *16cA11320*
FILING DATE:04-04-2001
                                        EEOC/HUD NUMBER:
                                              VIOLATION DATE:04/02/01
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Name of Aggrieved Person or Organization:
Ruth Anthony
60 Edgewood Street
Boston, MA 02119
Telephone Number: (617) 445-5889
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Named is the employer, labor organization, employment agency, or state/local
government agency who discriminated against me:
Computer Sciences Corporation
HUMAN RESOURCES
245 FIRST STREET
Cambridge, MA 02142
Telephone Number:        No. of Employees:20 +

Work Location: CAMBRIDGE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Cause of Discrimination based on:
Race, Color.
(Black (Non-Hispanic)).
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
The particulars are:
I, Ruth Anthony, the Complainant believe that I was discriminated
against by Computer Sciences Corporation, on the basis of Race,
Color. This is in violation of M. G. L. Chapter 151B S4 P1,1.

I feel I have been discriminated against based on my Race/Color
(Black) by the Respondent, Computer Sciences Corporation (CSC). I
began my tenure with the Respondent sometime in November of 1997,
until the present. I am the only Black Technical Writer out of four,
for the Respondent. I have been overlooked for promotions, career
avdvancements, and training. I believe the Respondents are creating
a hostile work environment for me as a means to push me out of the
company. I am the lowest paid employee for the same or similar work.
I am required to complete task that are not required of my Caucasian
co-workers, resulting in unfair work coditions. For example, I was
required to assist Mary Costello (Technical Writer),(Caucasian),
with her job. When I asked for assistance I was denied. My job
performance evaluations reflect I am more qualified than Mary. Mary
received a promotion to a Management position sometime in April of
2000. While I received the lowest pay increase which was (1.5%). I
believe all these things are being done to me because of the fact
that I am Black. In Violation of M.G.L.'S 151B, and the Civil Rights
Act. For more detailed facts and evidence, please see attachments.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
I swear or affirm that I have read this complaint and that it is
true to the best of my knowledge, information and belief.
A)
Notary Public: Keyette L. Hobb   Ruth Anthony
My Commission Exp: July 26, 2007

Keyette J. Hobbs                        DEF00102

TO WHOM IT MAY CONCERN:

This correspondence is a formal complaint regarding CSC's discrimination and unfair labor practices towards me on the Information Systems Services Project (ISSP) for the Enhanced Traffic Management System (ETMS) project at the Volpe National Transportation Systems Center in Cambridge, MA. I am denied equal pay, promotion, and training while other technical writers in the Documentation group are awarded these opportunities. CSC managers say that CSC, as the Prime government contractor, has no control over what the subcontractor companies pay the other writers on the project.

In November 1997, I was hired by CSC as a *Senior Member of the Technical Staff* to perform Documentation tasks. Ten months before that, I answered a newspaper ad for a Technical Writer and was hired by Unisys Corp. as a *Senior Product Information Analyst* to perform Documentation tasks. That year Unisys lost the contract to CSC.

Each year I must fill out a CSC Performance Appraisal Review (PAR) form, which requires me to describe my job and major accomplishments. After verifying what I write, the Documentation Manager (Team Leader) describes how I performed my accomplishments, rates me on a list of criteria, and gives me an overall rating on my job performance. My first year at CSC, I received a *Very Good* rating and a very low (1.5%) merit increase. The next two years my rating was dropped to *Good*, with minimal pay increases (2%). Although the Team Leader apparently saw no improvement in my job performance for two review cycles, last year I was the only full-time writer on ETMS since the Documentation group was reduced from five writers to myself and a writer who also charged time to documentation tasks in other departments. In addition to completing my assigned tasks, I was frequently requested to complete the other writer's ETMS tasks. While the ETMS documentation tasks were initially split between the two of us writers, I often completed all of these tasks.

During the group restructure last year, the Volpe customer (FAA) mandated us to use Microsoft Word as the primary authoring tool. The existing manuals were converted from Interleaf Desktop Publishing System to Word files. Although I used Word to write small guides at other companies before working at this site, I was now expected to develop and maintain large-scale documents in Word format without benefiting from the necessary formal training. When I requested CSC to purchase a $69.00 training disc that would help me design templates and graphics, develop a master document, table of contents, and an index, I was told that CSC had no budget for that type of training and would not provide training for just one or two people. The other writer attended a two-day Word class in downtown Boston. She also had the Visio software package installed on her PC to develop projects and was trained to publish Web-based documents and link Hypertext Markup Language (HTML) files.

DEF00103

This training and experience helped the second writer to be promoted to a management position that year, although she has not been leading the ETMS documentation efforts. When I asked the Team Leader if the other writer was now the Documentation Manager, he said "no" and that I would still report to him. When I asked the Department Manager the same question, he said, "She is the Lead on paper only." The other writer simply had to write an informal list of accomplishments. I assisted her on all four of the accomplishments that she listed under ETMS.

Last year the FAA purchased an 8-disc MS Word course for us to view and arranged four hours of Word consultation on table and graphics manipulation.

Over the past 9 months, I singularly worked on a 2-volume, 1800-page project, known as the System Design Document (SDD) and a 200-page Functional Description, in addition to several other projects. About 8 months ago I was asked to review a resume and interview an applicant who would be responsible for the SDD. Before the day of the interview, I did not know that the Documentation group was going to expand. Although I submitted a few questions for the Team Leader to ask the applicant, I declined to interview her because I felt more qualified than she was for the job. I could not objectively ask questions (or work with her) without knowing what my status was in the group. I asked the Team Leader the following questions:

1. What projects will I work on?
2. Why wasn't I previously told about the new position?
3. How is it different from what I am currently doing?
4. Is this a Documentation Manager/Leader position?
5. Where was the job posted?
6. Why wasn't I considered for the job?

I was told that:

- I would *be assisting* this person with work on the SDD.
- The major difference in job responsibilities was that I would restructure the existing documents while the new person writes new sections and updates some existing sections.
- Although the first plan was that the software developers were going to write the sections and my involvement would be minimal, a subcontractor referred the resume for hire.
- This job was not intended to be Documentation Manager.

I explained that I saw myself in the same position as I was in with the first writer, where I did most of the work while she got promoted. Now I was setting up everything for another writer to come in and take over with a higher position and pay.

DEF00104

That applicant was offered the job but declined. Since then, two more writers were hired. I don't know what they are working on but I am still being rushed through 2,000 plus pages of documentation. The Team Leader is not required to review, verify, or evaluate the other three writers' job performances because they work on ETMS for sub contractors. I am still doing more work than anyone else in the Documentation group but my consistent *Good* ratings indicate that I am only meeting the minimum requirements of the job; therefore, I get the lowest merit raise.

I am also the only one in the group who does not have Voice Mail, after requesting it twice in the last two years.

These concerns should be investigated. In addition to the questions previously listed, I would like answers to the following questions:

1. What is my real job title?
2. What is my job description?
3. What other titles and roles exist or are proposed in the Documentation group?
4. What are the organization and relationships within the group?
5. Which CSC employees on this contract have the title Member of the Technical Staff and what do they do?
6. Do CSC and the subcontractors have the same job categories and titles, since they are working on the same project?

Thank you for your prompt attention to this matter.

*Ruth Anthony 4/4/01*

Notary Public: Keyette L. Hobbs
My Commission Exp: July 26, 2007

DEF00105

# EXHIBIT O

## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

RUTH ANTHONY,

        Plaintiff,

v.

RALPH BUSBY, JOHN BUTLER, MARV TODD, JACQUELINE NEWSTADT, PATTI SKILES, and COMPUTER SCIENCES CORPORATION,

        Defendants.

Civil Action No. 03-cv-12423-RWZ

### FIRST SET OF INTERROGATORIES PROPOUNDED BY DEFENDANTS TO PLAINTIFF, RUTH ANTHONY

Pursuant to Fed. R. Civ. P. 33, Defendants, Ralph Busby, John Butler, Marv Todd, Patti Skiles, and Computer Sciences Corporation ("Defendants"), hereby propound the following interrogatories to Plaintiff, Ruth Anthony ("Plaintiff"), to be answered fully, separately, in writing, and under oath within thirty (30) days in accordance with the Federal Rules of Civil Procedure.

### INSTRUCTIONS

1.    In answering these interrogatories, Plaintiff should furnish all information available to her, including information in the possession all persons acting on her behalf, and not merely such information known of her own personal knowledge.

2.    If Plaintiff cannot answer these interrogatories in full after exercising due diligence to secure the information requested, Plaintiff should so state and answer to the extent

possible, specifying the nature of her inability to answer the remainder, and providing whatever information or knowledge that he possesses concerning the unanswered portion

3.     The interrogatories which follow are to be considered as continuing, and Plaintiff is requested to provide, by way of supplementary answers, such additional information or documents as she or any persons acting on her behalf may hereafter obtain which will augment, clarify or otherwise modify the answers now given to these interrogatories.  Such supplementary responses are to be served upon Defendants within thirty (30) days after receipt of such information or documents.

## DEFINITIONS

The following terms shall have the meanings indicated below:

1.     "Persons" means natural persons, corporations, partnerships, sole proprietorships, unions, associations, federations or any other kind of entity.

2.     "Document" means any printed, typewritten, handwritten or otherwise recorded matter of whatever character, including, but without limitation, files, correspondence, contracts, agreements, letters, purchase orders, memoranda, telegrams, notes, forms, catalogues, brochures, diaries, reports, calendars, inter-office communications, statements, jottings, announcements, depositions, affidavits, photographs, computer disks, computer printouts or other computerized data, or any other writings whatsoever, tape recordings, video tapes, motion pictures and any carbon or photographic copies of any such material, if Plaintiff does not have custody or control of the original.

3.     "Identify" means, with respect to a natural person, to state:  (1) his or her name; (2) his or her sex; (3) his or her last known address and telephone number; (4) his or her job title;

(5) the name, address, and telephone number of his or her employer; and (6) his or her relationship, if any, to Plaintiff.

4.    "Identify" means, with respect to a corporation, association or other entity, to state: (1) the legal name under which such entity is incorporated or registered; (2) the state in which such entity is incorporated or registered; (3) the full business address and telephone number of such entity; and (4) the offices of such entity.

5.    "Identify" means, with respect to documents, to state: (1) the author thereof and the person or persons to whom the document was originally directed; (2) the source from whom Plaintiff obtained such document or documents; (3) the date of each such document or documents; (4) the current custodian of each such document or documents; (5) the location at which each such document or documents is situated; and (6) the subject matter of each such document or documents.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

State Plaintiff's name, address, date of birth, place of birth, marital status (including spouse's name and date of marriage if applicable), names(s) and date(s) of birth of any child(ren) if applicable, and social security number.

**INTERROGATORY NO. 2:**

Identify each educational institution Plaintiff has attended, and state the dates of attendance, whether Plaintiff received a degree or certificate therefrom, and the nature and the date of the degree or certificate, if applicable.

**INTERROGATORY NO. 3**:

Please list all residences, if any other than the one listed in response to Interrogatory No. 1, that Plaintiff has had during the past seven (7) years, giving the complete address and dates of residence at each such address.

**INTERROGATORY NO. 4**:

Identify each employer by whom Plaintiff has been employed, other than Computer Sciences Corporation, including each employer's last known address and telephone number, and identify each period of self-employment, consulting, or other business relationship. For each employer, period of self-employment, consulting, or other business relationship, state:

(a)    the date(s) of employment, self-employment, consulting, or other business relationship, Plaintiff's job titles, and the duties performed by Plaintiff;

(b)    Plaintiff's rate of pay (including identification of any raise in pay), any employee benefits received, and any other compensation or remuneration received;

(c)    the reason for the termination, including, but not limited to, a statement of whether the severance of such employment or relationship was voluntary or involuntary; and

(d)    the name(s) of each supervisor or manager Plaintiff had.

**INTERROGATORY NO. 5**:

For each position Plaintiff held while employed by Computer Sciences Corporation, state the job titles and dates of each job; the salaries, wages, or compensation plans for each job; the name of Plaintiff's supervisor or immediate superior in each position; the location of such job; and the place where Plaintiff resided while performing such job.

**INTERROGATORY NO. 6**:

Identify each and every person with knowledge of any facts pertaining to the

allegations in the Plaintiff's Complaint and describe the facts possessed by each such person.

**INTERROGATORY NO. 7:**

Describe in detail each item of damage, including amounts, for which Plaintiff intends to seek recovery at the trial of this action, the manner in which such amount has been calculated, and the basis or support for such amount, and identify each document relied upon to determine such damages.

**INTERROGATORY NO. 8:**

Identify each expert witness whom Plaintiff intends to call at the trial of this action and for each such expert witness, provide the following information: his or her name; his or her residential address and business address; the subject matter on which the expert is expected to testify; the substance of the facts and opinions about which the expert is expected to testify; and a summary of the grounds for each such opinion.

**INTERROGATORY NO. 9:**

State whether Plaintiff has made any efforts to seek new employment, including self-employment or any work as an independent contractor or consultant, following the cessation of her employment from Computer Sciences Corporation. If so, state:

(a) the name and address of each potential employer, entity or person to whom Plaintiff made application, the date of each such application, and the position for which application was made;

(b) the name and address of any employment agency, career counselor or other employment recruiter with whom Plaintiff had contact, including the date and the nature of contact; and

(c) each and every document reflecting or relating to Plaintiff's efforts to seek new employment, including self-employment and any independent contractor or consulting work.

**INTERROGATORY NO. 10:**

State whether Plaintiff has previously instituted litigation or administrative charges against any other company or other organization by which she has been employed or applied for employment, or against any other individual supervisor or manager under whom she has worked. If the answer is in the affirmative, state the date each suit or administrative action was commenced; the name and address of the agency or other forum in which it was commenced; the substance of each such complaint; the outcome or present status of each matter; and identify each and every document upon which Plaintiff relied in answering or which in any way pertains to the information requested in this interrogatory.

**INTERROGATORY NO. 11:**

State whether Plaintiff has ever applied for unemployment compensation benefits, disability benefits, or social security benefits. If the answer is in the affirmative, identify the agency(ies) or company(ies) to whom such application was made; state the date of the application; the disposition of the application; the amount of the benefit paid, if any; and identify each and every document related to any such application and the disposition thereof.

**INTERROGATORY NO. 12:**

Identify each and every physician, psychiatrist, psychologist, social worker or other healthcare provider whom Plaintiff visited, consulted, or received treatment from relative to any physical or emotional condition Plaintiff alleges she has had since January, 2001, including but not limited to any condition she claims resulted from Defendants' actions. For each physician or other healthcare provider identified, state his or her address; any institutions with which he or she is presently associated or affiliated; any institutions with which the person

was associated or affiliated while treating Plaintiff; his or her occupation; his or her area of specialization, if any; the date Plaintiff first consulted that person or entity; the condition for which treatment was sought; the diagnosis that was rendered; the nature of the treatment rendered; whether Plaintiff is presently receiving treatment or consultation from such person or entity; and the cost of treatment.

**INTERROGATORY NO. 13:**

State whether Plaintiff has ever lodged an internal complaint of discrimination or document against any entity by which Plaintiff has been employed. If the answer is in the affirmative, state the name of all such entities, the nature of the complaint lodged, and the resolution thereof.

**INTERROGATORY NO. 14:**

Identify any and all sources of income received by Plaintiff during the period from January 1, 2000 to present. For each such source of income state the amount of income received and the frequency with which each such payment is or was received.

Respectfully submitted,

RALPH BUSBY, JOHN BUTLER, MARV TODD,
PATTI SKILES, AND COMPUTER SCIENCES
CORPORATION,

By their attorneys,

Joan Ackerstein, BBO # 348220
Heather L. Stepler, BBO # 654269
JACKSON LEWIS LLP
75 Park Plaza
Boston, Massachusetts 02116
(617) 367-0025

Dated: June 21, 2004

## CERTIFICATE OF SERVICE

This is to certify that on June 21, 2004, a copy of the foregoing document was served upon Plaintiff, Ruth Anthony, 60 Edgewood Street, Roxbury, MA, 02119 by first class mail, postage prepaid.

_Heather Stepler_
Jackson Lewis LLP