UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUTH ANTHONY,<br><br>Plaintiff<br><br>v.<br><br>RALPH BUSBY, JOHN BUTLER, MARV TODD, JACQUELINE NEWSTADT, PATTI SKILES, and COMPUTER SCIENCES CORPORATION (CSC),<br><br>Defendants | Civil Action No. 03-CV-12423-RWZ |

## PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Ruth Anthony moves that material facts in this matter are in dispute based on race discrimination, retaliation, wrongful termination, and defamation of character regarding Plaintiff's separation of employment with Computer Sciences Corporation (CSC). Plaintiff questioned the idea of relocating her office and the number of technical writers as well as other members of the technical staff working on the Enhanced Traffic Management System (ETMS) as part of the Information Systems Support Services Contract #DTRS57-97-C-00064, henceforth known as the Technical Support Services Contract (TSSC) at the U.S. Dept. of Transportation (DOT) Volpe Center in Cambridge, MA. This document and exhibits support Plaintiff's Memorandum Resisting Defendants' Motion for Summary Judgment on All Counts. Plaintiff hereby submits the following information according to rules outlined as Statements of Material Facts in Dispute.

### Parties

1. Plaintiff named defendants at the beginning of the complaint and suggests that CSC be used for all. These defendants represent CSC and are individually responsible for abusing contract procurement and management, as well as company and client policies.

1

2. Defendant Jacqueline Newstead refused to accept her notice of the complaint and has remained unrepresented. **(A)**

3. A major portion of Defendant's defense, including the termination letter by John Butler, is centered around Ms. Newstead's conversation with Plaintiff. **(B)**

4. Parties conspired against Plaintiff in preparing the termination letter in two different fonts at least two days before terminating Plaintiff. **(C)**

5. As early as two weeks after Plaintiff filed a discrimination complaint, parties discussed Plaintiff's termination via email. **(D)**

### The Volpe Contract

6. Contract #DTRS57-97-C-00064 lists CSC as the prime contractor and does not list any subcontractors. The contract does, however, name essential personnel. One of these persons is a Battelle employee, Steven Hannigan, to whom ETMS technical writer Mary Costello also reports. **(E)**

7. As lead contractor, CSC had the ability to set terms and conditions of employment for all employees. If CSC did not pay the subcontractors for specified work performed, the subcontractors would not be working on ETMS.

8. All employees working on the contract were notified of Ralph Busby's arrival **(F)** and a resume was on file for everyone working on the contract. **(G)**

9. CSC provided training for subcontractors. **(H)**

### Plaintiff's Hiring by CSC

10. After being interviewed and submitting a copy of her Unisys pay stub in October 1997, CSC offered Plaintiff a lateral position and salary.

11. Approximately one month after being hired, Plaintiff was given an $800 increase to cover public transportation expenses as a benefit to employees who did not drive to work. Employees who drove to work were allowed free or subsidized parking.

12. During the five years employed by CSC, Plaintiff received roughly a 6.4 % salary increase.

## The Documentation Group

13. Working solely in the capacity of a technical writer on ETMS, with the CSC title of Senior Member of the Technical Staff, Plaintiff worked with a team of computer programmers, analysts, testers, operators, and managers who were all responsible for writing and editing technical documentation.

14. The ETMS team was comprised of employees from several companies, all of which reported to Marvin Todd and John Butler. **(I)**

15. CSC did not advertise nor advise Plaintiff that a Documentation Manager position was available.

16. Mary Costello informed Plaintiff that she was promoted to ETMS Documentation Manager while Marvin Todd denied it. John Butler indirectly admitted it by saying that Ms. Costello was Documentation Manager "On paper only."

## The Relocation to Five Cambridge Center

17. In June 2001, two months after Plaintiff filed a discrimination complaint against CSC, Mary Costello told Plaintiff that the ETMS Documentation group was moving.

18. Plaintiff initiated communications resulting in a series of emails asking Mr. Butler for information about the move. **(J)**

19. Plaintiff received two emails regarding the move from people she did not know, Ramon Eves and Jon Johnson.

20. In one email, Mr. Butler said that the group would move if there was a consensus. Plaintiff then said that she was opposed to the move but did not say that she would not move.

21. Plaintiff received a call from Ms. Newstead, who told Plaintiff that if she did not like it, she could leave. Plaintiff was not aware that Ms. Newstead had the final say about the move.

22. On February 7, 2002, Ms. Skiles and Mr. Butler served Plaintiff with a termination packet and conducted an exit interview, where they collected and checked off CSC and Volpe property. **(K)** They told plaintiff that her benefits terminated at midnight and her final check would be mailed. Plaintiff was escorted out of the building by Ms. Skiles and was never given the opportunity to move her office to 5 Cambridge Center.

23. ETMS technical writers Mary Costello and James Green retained offices at 55 Broadway, leaving Plaintiff the only person and CSC employee to move.

24. Plaintiff did not know Arthur Rubin and was not aware that he was an ETMS technical writer. Ms. Costello first told Plaintiff that Rosanna Masiarelli was part of the ETMS Documentation group and Mr. Butler confirmed it in an email.

### Plaintiff's Posting of a Resume in 2003

25. Between 2002 and 2003, CSC advertised for at least five technical writer positions. **(L)**

26. On May 7, 2003, Plaintiff applied for a CSC technical writer position. **(M)**

27. In 2003, CSC employee Kevin Durham-Fisher informed Plaintiff about a technical writer position for a new Volpe contractor, P3. **(N)**

28. Plaintiff also sent a resume via email for that position with P3 but did not save a copy.

29. Plaintiff was not considered for either position at the Volpe Center due to retaliation for accusing CSC of discrimination and the defamation of her character that she had abandoned her job.

### Plaintiff's Charge of Discrimination

30. Plaintiff's 2001 charge of race discrimination named Mary Costello as a comparator because she was the only other technical writer known to Plaintiff and Ms. Costello was a co-employee of CSC. At that time CSC used other Senior Members of the Technical Staff, Computer Scientists, Analysts, and Managers (including Mr. Todd) to develop technical documentation. Therefore, the entire ETMS team is a valid comparator.

4

## Introduction

31. Plaintiff did not refuse to move, abandon the job, or voluntarily nor involuntarily resign her five-year employment as a technical writer with CSC. Plaintiff initiated information about the proposed move with CSC managers, Marvin Todd and John Butler, after hearing about the move from her co-worker and *defacto* supervisor, Mary Costello. Ms. Costello is a CSC subcontractor and co-employee who shared an office with Mr. Todd for three of the five years in which Plaintiff was employed at CSC.

32. CSC claims to have no control over Ms. Costello's terms and conditions of employment, including her training, promotion, and higher salary.

## Argument

### Discriminatory Discharge

33. In April 2001, Plaintiff was basically the only person working in the documentation group. Ms. Costello was supposed to be on ETMS part-time. Plaintiff was not the only Sr. Member of the Technical Staff or CSC employee responsible for writing, editing, testing, and reviewing documentation.

34. Defendants refused to provide Plaintiff with her full Requests for Production of Documents and First Set of Interrogatories during the discovery phase; however, Plaintiff personally knows and swears to the information cited in her complaint.

35. MCAD did not fully investigate the complaint and reported erroneous information in its findings, including the company name and that Plaintiff was the only employee at the site. **(O)**

### Discriminatory Treatment

36. Although Plaintiff's performance reviews consistently met job requirements, overall ratings and merit raises in salary were questionable. **(P)**

37. CSC's real reasons for the move were to remove Plaintiff from the ETMS project in order to downgrade her position and to bill DOT for excessive space and operating expenses, which allowed selective employees more than one office.

38. Plaintiff's office area in the Volpe Center remained unoccupied for at least six months after her termination.

39. Plaintiff never heard of Arthur Rubin and although Plaintiff had casually met Rosanna Masciarelli, Plaintiff did not know that Ms. Masciarelli supported ETMS in an administrative or any other capacity in August 2001 until Plaintiff asked Mr. Butler about the move, organization change, and project assignment.

**Retaliation**

40. CSC wrongfully terminated Plaintiff in retaliation for her accusations of employment discrimination.

41. CSC denied Plaintiff unemployment compensation; however, Plaintiff appealed the decision and won. **(Q)**

**Failure to Hire**

42. CSC's failure to offer Plaintiff a position was retaliatory. After terminating Plaintiff, CSC advertised several jobs. In reference to whomever CSC hired as a technical writer, greater education and computer skills are general and subjective statements.

Respectfully Submitted,

*Ruth Anthony*
Ruth Anthony, Pro Se
60 Edgewood Street, Roxbury, MA 02119
617-445-5889