UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-12423-RWZ

RUTH ANTHONY

v.

RALPH BUSBY, JOHN BUTLER, MARV TODD,
JACQUELINE NEWSTADT, PATTI SKILES and
COMPUTER SCIENCES CORPORATION

MEMORANDUM OF DECISION

December 15, 2005

ZOBEL, D.J.

   Plaintiff Ruth Anthony worked as a technical writer for a documentation team that serviced a government contract. When defendant Computer Sciences Corporation ("CSC") acquired that contract, it hired many of the team members, including plaintiff, to continue handling their contract duties. Other team members accepted positions with companies that participated as subcontractors to CSC, including the company Battelle. The documentation team, including both CSC and Battelle employees, worked in an office building located on Broadway Street in Cambridge, Massachusetts. Because of space constraints at that building, CSC decided to move its documentation team employees to another building located two blocks away on the same street. Although CSC prepared a larger, newer office for plaintiff, with better views than her existing office, she refused to move. CSC and co-defendants Ralph Busby, John Butler, Marv Todd, Jacqueline Newstadt and Patti Skiles, urged plaintiff to accept the change and

move her office.  They warned plaintiff that her failure to transfer would be understood as job abandonment.  Plaintiff questioned CSC's motive for moving the documentation team and, having never received a satisfactory response, remained in her existing office.  CSC thereafter determined that plaintiff had abandoned, and thus effectively resigned from, her position and required her to leave.  A former CSC colleague later informed plaintiff of a technical writer job posting with another group at CSC.  Instead of responding directly to the hiring individual, as recommended in the e-mail forwarded to plaintiff by her former colleague, she instead applied through the regular human resources channel.  CSC never interviewed her and offered the position to a different candidate with a stronger educational background than plaintiff.

Before leaving CSC, plaintiff filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD") alleging racial discrimination by CSC.  She claimed that CSC denied her, a black woman, the same opportunities for training, promotions, career advancement and compensation as made available to her white colleagues, specifically Mary Costello.  MCAD dismissed the grievance on findings that plaintiff left her position voluntarily and that Ms. Costello worked for Battelle, not CSC.

Plaintiff characterized CSC's subsequent failure to rehire her as retaliation for the MCAD claim and filed the instant suit for discrimination and retaliation.  She alleged that Defendants engaged in the following conduct:  (1)"race discrimination by denying Plaintiff job benefits afforded white co-workers and ultimately terminating her employment in violation of M.G.L. c. 151B, § 4, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981," (2) retaliatory termination of plaintiff for her "filing a

discrimination complaint in violation of M.G.L. c. 151B, § 4," (3) retaliatory refusal "to rehire Plaintiff after she applied for a technical writer position that was advertised on the internet in March 2003," and (4) defamation of plaintiff's character and professional credibility by falsely stating that she abandoned her job.  (Pl.'s Mem. Resisting Defs.' Mot. for Summ. J. 2-3; Compl. ¶¶ 32-33).  Defendants now move for summary judgment on all counts, and plaintiff opposes.

As a threshold matter, summary judgment is allowed on Counts 1, 2 and 3 as to the individual co-defendants named alongside CSC.  With respect to plaintiff's discrimination claim under the Civil Rights Act of 1964, "[a]lthough the First Circuit has not decided whether there is individual liability under Title VII, 'every circuit court that has interpreted Title VII's definition of 'employer' and the majority of District Courts in the First Circuit . . . have concluded that Congress did not intend to impose individual liability upon agents of an employer.'" Edsall v. Assumption College, 367 F. Supp. 2d 72, 77 (D. Mass 2005), quoting Healy v. Henderson, 275 F. Supp. 2d 40, 44-45 (D. Mass 2003).  As to the state law claims of discrimination and retaliation, while Chapter 151B permits individual liability for those who aid and abet an employer's discriminatory conduct, plaintiff must show that the individual co-defendants "had the requisite intent to discriminate." Beaupre v. Cliff Smith & Assoc., 50 Mass. App. Ct. 480, 494 n.23 (2000).  Plaintiff alleged such intent in her Complaint and asserts in her brief that "[a]s early as two weeks after Plaintiff filed a discrimination complaint, [defendants] discussed Plaintiff's termination via email."  (Pl.'s Supp. Opp. to Defs.' Mot. for Summ. J. ¶ 5).  However, none of the evidence cited in support of this allegation supports a

finding of intent. For example, plaintiff offers a copy of anonymous notes that documented a conversation between the author and plaintiff about plaintiff's relationship with Ms. Costello. (See id. at Ex. D-1). These notes state that "[plaintiff] said that she wanted to leave but that she wanted 'a package like others got.'" (Id.). Similarly, an email from defendant Todd observed that "I spoke with [plaintiff] again and as a result of our discussion I am beginning to change my opinion regarding whether [plaintiff] is willing to stay." (Id. at Ex. D-2). Defendant Todd proceeded to note, however, that "[n]ow that I understand where [plaintiff] is coming from on these issues, I think that we can make some changes that will convince her to stay." (Id.). Far from evidencing intent to discriminate, such correspondence suggests that defendants wanted plaintiff to remain in her position and were willing to consider steps that might resolve her concerns. Plaintiff's claim that preparation by defendants of her termination letter "in two different fonts at least two days before terminating [her]" evidences a conspiracy falls far short of demonstrating the requisite intent to discriminate. (Id. at ¶ 4). Neither do Ms. Newstadt's cold demeanor nor the participation by more than one defendant in carrying out the actual termination support a theory of intent or conspiracy to discriminate. (Id. at ¶ 21-22). Thus, plaintiff's federal and state law discrimination and retaliation claims against the individual co-defendants in Counts 1, 2 and 3 do not survive summary judgment.

     Defendants' motion for summary judgment is allowed also as to CSC on these same Counts, albeit for different reasons. For Count 1, "[t]o establish a prima facie case of racial discrimination, [plaintiff] must show that (1) [s]he belonged to a protected

4

class, a racial minority; (2) [s]he was performing [her] job at a level that rules out the possibility that [s]he was fired for job performance; (3) [s]he suffered an adverse job action by [her] employer; and (4) [her] employer sought a replacement for [her] with roughly equivalent qualifications." Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003). If plaintiff establishes a prima facie case, then defendants must articulate a legitimate, non-discriminatory reason for the adverse employment action. Id. at 174. Upon such showing, the plaintiff then bears the burden of demonstrating the reason to be pretext for underlying discrimination. See id. "In assessing pretext, the court must look at the total package of proof offered by the plaintiff." Id.

Defendants contend that, assuming *arguendo* that plaintiff establishes a prima facie case of racial discrimination with respect to job benefits and her termination, she has offered no basis for characterizing their legitimate, non-discriminatory reasons for these actions as pretext. Plaintiff's argument regarding job benefits centers on unequal benefits given to her as compared to opportunities enjoyed by Ms. Costello. However, Ms. Costello was not employed by CSC which, therefore, had no obligation or authority to increase or decrease her pay and benefits. In fact, as plaintiff herself acknowledged, "CSC has the ability to set terms and conditions of employment *only for its employees*." (Pl.'s Statement of Facts in Disp. ¶ 14)(emphasis added). Thus, any comparison of the benefits afforded to plaintiff by CSC with those provided to Ms. Costello by Battelle cannot prove discrimination by CSC. Plaintiff's assertion that CSC exerted some control over promotion or training offers made by Ms. Costello's employer, Battelle, as a subcontractor, remains entirely unsupported by any evidence or legal basis. (Id. at ¶

15).  Finally, although plaintiff suggests that a comparison with any other team member will validate her racial discrimination claim, she provides no further information, much less actual evidence, in support of this suggestion with respect to even one member of the team.

With respect to plaintiff's termination, CSC characterizes this "adverse job action" as a necessary response to plaintiff's refusal to relocate to her new office.  After providing plaintiff with "a letter explaining that the move was due to a lack of space at 55 Broadway and pointing out that the other technical writers were moving . . . [and] explain[ing] the consequences of Plaintiff's continued refusal to move," defendants acted on that warning and terminated plaintiff's employment.  Plaintiff states that "CSC's real reasons for the move were to remove Plaintiff from the [government] project in order to downgrade her position and to bill [the government] for excessive space and operating expenses, which allowed selective employees more than one office." (Pl.'s Supp. Mot. Opp. to Defs.' Mot. for Summ. J. ¶ 37).  Nothing in the record elevates this statement to anything more than speculation.  Because plaintiff has failed to meet the burden of showing CSC's explanation to be pretext, defendants' motion for summary judgment on plaintiff's racial discrimination claims in Count 1 as to CSC is allowed.

In Counts 2 and 3, plaintiff alleges retaliation by CSC, first, in its termination of her and, second, in its failure to rehire her.  "To succeed on claims of retaliatory discharge and retaliatory harassment, a plaintiff must establish the basic fact that he was subjected to an adverse employment action *because* of his protected activity." Lewis v. Gillette Co., 22 F.3d 22, 24 (1st Cir. 1994)(emphasis in original).  Plaintiff may

show this through "competent evidence that the alleged retaliators knew of the plaintiff's protected activity and that a retaliatory motive played a part in the adverse employment actions alleged." Id.  Although plaintiff asserts a causal relationship between her filing a claim with MCAD and her subsequent termination, she cites no evidence in the record to support this claim other than the chronology, that the termination occurred after the filing.  (See Pl.'s Mem. Resisting Defs.' Mot. for Summ. J. 5; Pl.'s Supp. Opp. to Defs.' Mot. for Summ. J ¶ 40).  Even less supports the retaliation claim with respect to plaintiff's later job application, as she admits she applied for one job at CSC over the internet and did not personally contact anyone at CSC, including her former colleagues, to inform them of her application.  (See Ackerstein Decl. Ex. A, p.162-3 (Anthony Dep.)).  Plaintiff offers an email confirming receipt by CSC of her application but no evidence of who, at CSC, reviewed it, much less whether that individual knew of plaintiff's earlier MCAD filing.  (See Pl.'s Supp. Opp. to Defs.' Mot. for Summ. J. Ex. M).   Moreover, defendant Skiles, who participated in hiring for the position to which plaintiff applied, testified that she did "not recall receiving a copy of Plaintiff's resume . . . [and] did not know that Plaintiff was interested in returning to work for CSC."  (Skiles Decl ¶ 13). Accordingly, defendants' motion on Counts 2 and 3 as to CSC is allowed.

In her last claim, plaintiff accuses CSC and the individual co-defendants of defamation, although this claim was not clearly stated in the Complaint or recognized as such by defendants.  In any case, summary judgment on this Count 4 is allowed.

The elements of a defamation claim under Massachusetts law require the plaintiff to establish that

> (a) [t]he defendant[s] made a statement, concerning the plaintiff, to a third party . . . [,], (b) [t]he statement could damage the plaintiff's reputation in the community . . . [,] (c) [t]he defendant[s] [were] at fault in making the statement . . . [and] (d) [t]he statement either caused the plaintiff economic loss . . . or is actionable without proof of economic loss.

Ravnikar v. Bogojavlensky, 438 Mass. 627, 629-30 (2003).  Plaintiff asserts that she is "concerned about what [defendants] would say, you know, if someone, a reference called," but she identifies no actual specific defamatory statements allegedly made by CSC.  (See Ackerstein Decl. Ex. A, p.161 (Anthony Dep.)).  She confirmed that she has never asked any employer to call anyone at CSC and is not aware of any employer, or prospective employer, making such a call.  (See id. at p. 163).  Furthermore, plaintiff never describes any particular injury suffered as a result of any defamatory statements.  Accordingly, defendants' motion for summary judgment on Count 4 is allowed as to both CSC and the individual co-defendants.

    Accordingly, defendants' motion for summary judgment on all counts (#29 on the docket) is allowed, and judgment may be entered dismissing the Complaint against all defendants.

 

|  |  |
|---|---|
| _____<br>DATE | /s/ Rya W. Zobel<br>RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |